The STATE of Ohio, Appellee,

v.

CATHEL, Appellant.

[Cite as *State v. Cathel* (1998), 127 Ohio App.3d 408.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18629.

Decided April 29, 1998.

*Max Rothal,* Director of Law, *Douglas J. Powley,* Chief City Prosecutor, and *Gerald K. Larson,* Assistant City Prosecutor, for appellee.

*J. Dean Carro,* Appellate Review Office, School of Law, University of Akron, for appellant.

BAIRD, Judge.

Steven C. Cathel appeals from his conviction and sentence by the Akron Municipal Court. We reverse.

Responding to complaints about someone trying to break into cars at an address on Hillman Street in Akron, Akron police officers stopped Cathel as he was walking down Hillman at approximately 2:30 a.m. on April 21, 1997. The officers arrested Cathel on a charge of criminal mischief, in violation of Akron City Code 131.07. In the ensuing patdown search of Cathel, police discovered, in Cathel's front left pocket, a knife, the blade of which was emblazoned with the trade name "Deerslayer." The knife was in a closed position in the pocket. When opened, an operation requiring two hands, the knife's blade is four inches long. Cathel was charged with carrying a concealed weapon, in violation of R.C. 2923.12(A).

A bench trial was conducted on June 16, 1997. At the close of the state's case, Cathel moved for an acquittal on both charges pursuant to Crim.R. 29(A), which provides that, upon motion, a trial court shall order an acquittal if it determines that the evidence presented is insufficient to sustain a conviction on any charged offense. The trial court granted the motion in part, directing a verdict of acquittal on the criminal mischief charge, but overruled Cathel's motion on the carrying a concealed weapon charge. Cathel was convicted and sentenced. Cathel appeals, assigning one error.

Cathel's sole assignment of error states:

"Appellant Cathel was denied due process of law as guaranteed by Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution as the evidence presented by the city of Akron failed to show beyond a reasonable doubt that the knife in question was a deadly weapon under R.C. 2923.11(A), which requires that it be designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

Resolution of Cathel's assignment of error turns upon the legal status of the Deerslayer knife. Cathel was convicted of violating R.C. 2923.12(A), which provides that "[n]o person shall knowingly carry or have, concealed on his or her person or concealed readily at hand, any deadly weapon or dangerous ordnance." "Deadly weapon" is defined at R.C. 2923.11(A) as "any instrument, device,. or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

There is no dispute that the knife in question is capable of inflicting death. Cathel argues that his conviction violates his due process rights because the state presented insufficient evidence to prove that the Deerslayer knife was "designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

The Due Process Clause of the United States Constitution requires the prosecution to prove each element of the charged crime beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–1073, 25 L.Ed.2d 368, 375. A conviction based on legally insufficient evidence violates due process. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663. The applicable standard for determining whether a conviction is supported by sufficient evidence has been set forth by the Ohio Supreme Court:

"The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Simply stated, when reviewing for sufficiency, courts are to assess whether, if believed, the evidence against a defendant would support a conviction. See *Thompkins, supra,* 78 Ohio St.3d at 390, 678 N.E.2d at 548–549 (Cook, J., concurring).

The trial court found the following:

"In this case, since the events took place at 2:30 in the morning, in a residential area, a point there is no indication that the weapon or that, excuse me, the knife was being used for * * * any type of purpose other than to be used as a weapon. It's my belief that a knife in and of itself is an instrument capable of inflicting death and is designed for use as a weapon. So, my feeling is that the statute has been met in this case."

Contrary to the trial court's pronouncement, a knife is not considered "in and of itself" to be a deadly weapon under the statute. "[A] knife is not presumed to be a deadly weapon, even if it is concealed." *Columbus v. Dawson*

(1986), 28 Ohio App.3d 45, 46, 28 OBR 56, 57, 501 N.E.2d 677, 678. Further, the trial court noted that the trial produced "no indication that the * * * knife was being used for * * * any type of purpose other than to be used as a weapon." Contrary to the trial court's implication, it is not a defendant's burden to negate the elements of a crime; it is the state's burden to prove them. To convict Cathel of carrying a deadly weapon, the state must prove either (1) that the knife was designed or specifically adapted for use as a weapon, or (2) that the defendant possessed, carried, or used the knife as a weapon. *Id.*

■ The evidence presented was insufficient to prove the element that the knife was "possessed, carried, or used as a weapon." The state cites *State v. Workman* (1992), 84 Ohio App.3d 534, 617 N.E.2d 723, for the proposition that circumstantial evidence surrounding the accused's possession of the knife can prove this element.[1] In *Workman*, the knife in question was a carpet knife, whose legitimate use was to cut carpet. The circumstantial evidence relied upon in *Workman* was that Workman "brandish[ed] the knife after being chased and confronted by police officers." *Id.* at 537, 617 N.E.2d at 725.

■ Cathel did not brandish his knife. The state produced no proof at trial to support the criminal mischief charge, which had provided the justification for searching Cathel in the first place. The only circumstance left for the state to cite is the fact that Cathel carried the knife in his pocket as he walked down a residential street at 2:30 in the morning. That circumstance does not transform a pocketknife into a weapon. In *State v. Anderson* (1981), 2 Ohio App.3d 71, 2 OBR 79, 440 N.E.2d 814, the police, responding to a call in the early morning hours reporting that three white males were engaged in criminal damaging, apprehended the accused hiding under a van. A search yielded a folding pocketknife with a locking four-inch blade. The court found that hiding from police in the early morning hours is an insufficient circumstance to transform a pocketed pocket knife into a deadly weapon.[2] *Id.* at 72, 2 OBR at 80, 440 N.E.2d at 815–816. Nor should the fact that Cathel was walking down a street in the early morning hours so transform his pocketed pocketknife.

■ Likewise, the evidence presented was insufficient to prove that the knife was "designed or specifically adapted for use as a weapon." On appeal, the state

---

1. In *Workman*, the court noted that a defendant's state of mind must be inferred from the totality of the circumstances surrounding the alleged crime. *Id.*, 84 Ohio App.3d at 536, 617 N.E.2d at 725.

2. Even being engaged in criminal acts is insufficient *per se* to make a pocketed knife into a deadly weapon. *State v. Patterson* (Mar. 14, 1994), Stark App. No. 9435, unreported, 1994 WL 115952 (that accused had a "produce knife" in his pocket while he committed a theft was not sufficient evidence that the knife was possessed, carried, or used as a weapon).

cites the following facts: the blade is four inches long, the blade locks into place, the knife has "none of the characteristics of the Swiss Army variety," and the blade bears the trademark "Deerslayer."

In *State v. Anderson*, 2 Ohio App.3d 71, 2 OBR 79, 440 N.E.2d 814, the court had before it a knife much like the one in this case, in that it had a four-inch-long blade that locked into place but required two hands to open. The court concluded:

"The record is devoid of any evidence which demonstrates beyond a reasonable doubt that this knife was designed or adapted for use as a weapon. It was neither a switch or other spring-loaded blade, nor a gravity blade capable of instant one-handed operation, and differs only in its somewhat greater length from the familiar type of clasp knife carried as a useful tool by thousands * * *." *Id.* at 72, 2 OBR at 80, 440 N.E.2d at 816. See, also, *State v. Ratcliff* (Oct. 26, 1983), Pickaway App. No. 82 CA 13, unreported, 1983 WL 3288. The element of design or adaptation has been fulfilled where the knife in question had a large handle curved and grooved in such a way that it could be grasped in the whole hand the way one would grasp a weapon, *State v. White* (Dec. 31, 1987), Cuyahoga App. No. 53167, unreported, 1987 WL 32115, or had a handle with deep finger grips and a knuckle shield, *State v. Golden* (June 12, 1991), Lorain App. No. 90CA004877, unreported, at 4, 1991 WL 108576, or was a "Rambo-type of knife" or "survival knife" with a serrated edge, *State v. Jones* (May 5, 1993), Lorain App. No. 92CA005419, unreported, at 4–5, 1993 WL 145761, or was a "well-honed" steak knife. *State v. Thrasher* (Feb. 26, 1986), Hamilton App. No. C–850439, unreported, 1986 WL 2502. None of these design elements is present on Cathel's knife. Nothing in the form of Cathel's knife indicates its design or specific adaptation as a weapon. That Cathel's knife is unlike a Swiss Army knife is irrelevant: that a knife is unlike certain nondeadly weapons does not tend to prove that it is a deadly weapon.

Assuming *arguendo* that a trade name emblazoned on a knife's blade can indicate the knife's design as a weapon, we decline to find that "Deerslayer" does so here. In *State v. Anderson*, 2 Ohio App.3d 71, 2 OBR 79, 440 N.E.2d 814, the court declined to find that the insignia "007" borne on a four-inch blade constituted evidence that the knife was designed as a weapon. "007" refers to a fictional character, James Bond, who had a license to kill human beings. "Deerslayer" refers to the killing of deer, although we should not rule out its possible reference to the ethos evoked by James Fenimore Cooper's frontier novel bearing the same name. In any case, it is difficult to imagine the circumstances under which such a knife would be used to kill a deer. There is no knife season on deer. A more reasonable inference to draw from the name "Deerslayer" is that people who slay deer, *i.e.*, deer hunters, would find such a knife useful in dealing with

the carcasses of slain deer. The functions suggested by the name are postmortem rather than lethal.

Because insufficient evidence was presented to prove that Cathel's knife was a "deadly weapon" within the meaning of R.C. 2923.12(A), we sustain Cathel's assignment of error. The judgment of the trial court is reversed.

*Judgment reversed.*

SLABY and DICKINSON, JJ., concur.