DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, James Walter Deluzia, appeals the decision of the Summit County Court of Common Pleas finding him guilty of felonious assault and carrying a concealed weapon; a second degree felony and a first degree misdemeanor, respectively. We affirm the judgment of the trial court in part, reverse in part, and remand.
 {¶ 2} Defendant was indicted on October 13, 2004 of one count of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2), and one count of carrying a concealed weapon in violation of R.C.2923.12(A)(1). Defendant waived his right to a jury trial and elected, rather, to be tried by the court. The bench trial commenced on January 24, 2005, and the trial judge found Defendant guilty on both counts.
 {¶ 3} Per journal entry dated January 28, 2005, Defendant was sentenced to six months in prison for carrying a concealed weapon and two years in prison for felonious assault. The sentences, which were to be served concurrently, were suspended upon certain conditions, including that Defendant complete two years of community control.
 {¶ 4} Defendant now appeals his sentence, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR I
"The trial court's judgment is against the manifest weight of the evidence and is not supported by the evidence."
 {¶ 5} In his first assignment of error, Defendant maintains that the trial court's judgment, finding him guilty on both counts in the indictment, was not supported by the evidence and was against the manifest weight of the evidence.
 {¶ 6} While sufficiency of the evidence and manifest weight of the evidence are legally distinct issues, we note that a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Cuyahoga Falls v. Scupholm
(Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735, at 5. Therefore, we will focus our discussion on whether Defendant's convictions were against the manifest weight of the evidence.
 {¶ 7} When a defendant maintains that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier or fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This Court may only invoke the power to reverse based on manifest weight in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. Sykes Constr. Co. v. Martell (Jan. 8, 1992), 9th Dist. Nos. 15034 and 15038, at 5-6.
 {¶ 8} In the case at hand, Defendant was convicted of felonious assault and carrying a concealed weapon. We will first discuss Defendant's felonious assault conviction. R.C. 2903.11(A)(1), the felonious assault statute, prohibits one from knowingly causing serious physical harm to another. One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Serious physical harm" includes physical harm which causes a temporary, substantial impairment. R.C. 2901.01(A)(5)(c).
 {¶ 9} Testimony at trial revealed that Timothy Koehler and JoLynn Dornetta had a daughter together. Though a court was never involved in determining parental rights, both Koehler and Dornetta agreed that Koehler had possession of the child although Dornetta had custody. On September 10, 2004, Koehler left the four year old child with a babysitter while he went to work. Later that day, Dornetta and Defendant were driving in Defendant's car when they saw the child on the sidewalk. She was with other children at what Dornetta stated "looked like a little street festival[.]" Dornetta got out of the car and talked to her daughter, whom she had not seen in three weeks, and determined that a lady named Janice was watching her. Dornetta then went to Koehler's work place, which was next to where the street festival was going on, and told him that she was going to take the child.
 {¶ 10} Koehler testified that he told Dornetta not to take her and then went outside to tell his daughter to stay with the babysitter. Koehler saw Defendant in his car and had words with Defendant, not for the first time, and punched Defendant's car, yelling to Defendant to stay away from his daughter. Koehler then returned to work. Later, during a work break, Koehler went outside again to check on his daughter. He was informed that she was not there, and he got into his car and drive to Dornetta's house. At Dornetta's house, he saw Defendant's car in the driveway.
 {¶ 11} Koehler stated that he knocked on the front door, and no one answered. He then went to the back door, which was left partially ajar and walked into the house. Koehler testified that "as soon as I opened the door I could hear my daughter saying I want to talk to my dad or I want to see my dad * * * and I heard [Defendant's] voice saying, well, you have to talk to him through the window, or something along those lines[.]"
 {¶ 12} After Koehler had entered the house, Dornetta took the child and went upstairs. Koehler was trying to talk to Dornetta and look for Defendant, whom he had suspected was still in the house. After a while Koehler noticed that Dornetta was not responding to him and "basically [he] was standing alone in the house." He testified that he "was concerned that they (Dornetta and Defendant) were going to try to take off with [his] daughter. [He] thought they went back outside, jumped in the car and t[ook] off with [his] daughter."
 {¶ 13} Kohler then walked out the patio door looking for his daughter. As soon as he "crossed the threshold of that patio door [he] got clocked." He stated that he had no idea that Defendant was by the patio door waiting for him, and he did not know what he had been hit with. When he came to and looked up, Koehler testified that he saw Defendant holding a bat in his hands and giggling.
 {¶ 14} Koehler stated that he then picked up an aluminum folding chair to use as a "shield," and he went after Defendant. Noticing that a bone was sticking out of his face and that an entire row of his teeth were loose, Koehler abandoned the chase and went to call the police.
 {¶ 15} Three police officers responded to the call. At the time the first two arrived at Dornetta's house, Defendant was still holding the bat in his hands. Officer Bell pulled his gun, and Defendant eventually complied with Officer Dawson's commands to drop the bat.
 {¶ 16} Defendant told Officer Bastock, one of the three responding officers, that he had been attacked by Koehler and acted in self-defense. Officer Bastock testified that Defendant was examined, and the exam showed no evidence of bruising, redness, swelling or blood.
 {¶ 17} Defendant's version of the events differs significantly from the above version. Defendant claimed he and Koehler had started fighting inside of the house and that Koehler had chased him outside. Defendant picked up a bat while Koehler picked up an aluminum folding chair. Defendant stated that he did not know who had hit whom first, and asserted that Koehler hit him on the neck with the chair while he hit Koehler with the bat. As noted above, however, the police examination of Defendant does not support his assertion that he was hit with anything as there were no red marks, bruises, blood, or swelling. As such, the trial court was not persuaded that Defendant acted in self-defense.
 {¶ 18} The prosecution's claims, if believed, show that Defendant knowingly hit Koehler with a bat causing him serious injuries. According to the prosecution testimony, Defendant was silently waiting outside for Koehler. Without any immediate threat of physical harm, Defendant hit Koehler with a baseball bat as soon as he walked outside to look for his daughter. Defendant and Koehler had not been fighting in Dornetta's house prior to Defendant's attack, and the evidence presented does not support Defendant's claims that he had acted in self-defense or that he had been hit with a chair. When the police arrived, Defendant was still holding the bat. Koehler had to spend four nights in the hospital, and had to have surgery on his jaw, which involved having it wired shut for over six weeks.
 {¶ 19} `"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.'" State v. Wolery (1976),46 Ohio St.2d 316, 331, quoting State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Similarly, when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the prosecution testimony was believed. See Statev. Warren (1995), 106 Ohio App.3d 753, 760.
 {¶ 20} When determining whether a conviction was against the manifest weight of the evidence, the appellate court decides whether the trier of fact `"clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 83, quotingState v. Martin (1983), 20 Ohio App.3d 172, paragraph three of the syllabus. This is not such a case. "This Court will not overturn a judgment based solely on the fact that the [trier of fact] preferred one version of the testimony over the other." State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at 9, citing State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. The evidence persuades us that the trier of fact neither lost its way nor created a manifest miscarriage of justice in convicting Defendant of felonious assault and finding his claim of self-defense incredible.
 {¶ 21} Defendant next claims that his conviction for carrying a concealed weapon was against the manifest weight of the evidence. Defendant does not deny that he was carrying a pocket knife with a three-inch blade; he claims that it was against the manifest weight of the evidence for the trier of fact to have found that the pocket knife was a "deadly weapon or dangerous ordinance" for purposes of R.C.2923.12(A). We agree.
 {¶ 22} "[A] knife is not presumed to be a deadly weapon, even if it is concealed." Columbus v. Dawson (1986), 28 Ohio App.3d 45, 46. This Court has previously stated that to convict a defendant "of carrying a deadly weapon, the state must prove either 1) that the knife was designed or specifically adapted for use as a weapon, or 2) that the defendant possessed, carried, or used the knife as a weapon." State v. Cathel
(1998), 127 Ohio App.3d 408, 412, citing Dawson,28 Ohio App. 3d at 46.
 {¶ 23} In the instant case, the state presented evidence that the knife had a three-inch blade that would stay in place when opened. We are not persuaded that the State has met its burden of proof that the knife was designed or specifically adapted for use as a weapon. Id. In Cathel,
we were presented with a situation similar to the one at hand. In that case, the knife in question was four inches long, the blade locked into place, and it bore the trademark "Deerslayer." The knife in Cathel, which had a bigger blade than the one in question, was not found to be a deadly weapon. Id.
 {¶ 24} The case of State v. Anderson (1981), 2 Ohio App.3d 71, also involved a knife with a four-inch blade that locked into place. TheAnderson court concluded that:
"The record is devoid of any evidence which demonstrates beyond a reasonable doubt that this knife was designed or adapted for use as a weapon. It was neither a switch nor other spring-loaded blade, nor a gravity blade capable of instant one-handed operation, and differs only in its somewhat greater length from the familiar type of clasp knife carried as a useful tool by thousands[.] * * * Nor, alternately, was there credible evidence that the knife was nevertheless carried, possessed, or used as a weapon." Id. at 72.
 {¶ 25} In the case at hand, no evidence was presented that the knife was designed or specifically adapted as a weapon. Nor was evidence presented that Defendant carried, used, or possessed the knife to use as a weapon. The knife was not used to injure Koehler; Defendant did not even take it out of his pocket. Without any evidence tending to show that the knife was used as a weapon, adapted for use as a weapon or designed as a weapon, we find that the trial court erred in convicting Defendant of carrying a concealed weapon. Thus, we affirm in part Defendant's first assignment of error as we find that his conviction for carrying a concealed weapon was against the manifest weight of the evidence.
 {¶ 26} Defendant's first assignment of error is affirmed in part and reversed in part.
 ASSIGNMENT OF ERROR II
"[Defendant's] conviction must be overturned in that he was not provided with competent trial counsel."
 {¶ 27} In his second assignment of error, Defendant argues that his conviction should be overturned since his trial counsel was ineffective. We disagree.
 {¶ 28} In determining whether a defendant's right to effective assistance of counsel has been violated, we consider whether counsel violated any of the essential duties owed to the defendant and whether prejudice arose from such violations. See Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674; State v. Calhoun (1999),86 Ohio St.3d 279, 289.
 {¶ 29} Licensed attorneys are presumed competent in Ohio. State v.Lytle (1976), 48 Ohio St.2d 391, at 397. Defendant must overcome the "presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101, 100 L.Ed. 83. Prejudice exists where the trial result would have been different but for the alleged deficiencies of counsel. State v. Bradley (1989),42 Ohio St.3d 136, at paragraph three of the syllabus. Defendant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland, 466 U.S. at 687.
 {¶ 30} This Court may dispose of a claim of ineffective assistance of counsel by analyzing only the second prong of the test where defendant fails to show sufficient resulting prejudice. In re J.J., 9th Dist. No. 21386, 2004-Ohio-1429, at ¶ 16.
 {¶ 31} Defendant claims that his counsel was ineffective for failing to object to two hearsay statements, that he did not present the proper legal argument with respect to evidence of prior confrontations between Defendant and Koehler and because he did not present an adequate argument with respect to his claim of self-defense.
 {¶ 32} The hearsay presented that Defendant claims Defense counsel failed to object to was as follows: (1) Koehler testified that a third party had told him that Dornetta and Defendant had taken his daughter, and (2) Koehler testified that the Summit County Children's Services Board had warned him to provide Dornetta with only supervised visitation with the child. Later during trial, this statement was found to be false. Neither statement has any bearing on Defendant's guilt, and thus we fail to see how objections to either statement would have changed the outcome of the trial; one statement was admittedly false, and the other was irrelevant.
 {¶ 33} Regarding the remaining claims, while Defendant explains with particularity which actions by defense counsel he asserts were ineffective, he makes no showing of prejudice. As Defendant has failed to show that any prejudice resulted from his counsel's performance, we overrule his second assignment of error.
 {¶ 34} We overrule Defendant's first assignment of error as it pertains to his conviction for felonious assault, and affirm his first assignment of error as it pertains to his conviction for carrying a concealed weapon. Defendant's second assignment of error is denied, and the case is remanded to the trial court.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. Costs taxed to both parties equally.
Exceptions.
Whitmore, J. Batchelder, J. CONCUR