[Cite as *State v. Gilkey*, 2019-Ohio-4417.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 18-CA-103 |
| | : | |
| MICHAEL R. GILKEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Appeal from the Licking County Court of
                            Common Pleas, Case No. 18CR00038

JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:     October 25, 2019

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

WILLIAM C. HAYES                        JAMES A. ANZELMO
LICKING CO. PROSECUTOR                  446 Howland Dr.
PAULA M. SAWYERS                        Gahanna, OH 43230
20 S. Second St., Fourth Floor
Newark, OH 43055

*Delaney, P.J.*

{¶1} Appellant Michael Gilkey appeals from the October 5, 2018 Judgment of Sentence of the Licking County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on January 18, 2018, when appellant and Jane Doe argued inside a van as they drove through Newark. Doe, who was eight and a half months pregnant, got out of the van and appellant told her to get back in. She refused and they argued; ultimately they ended up struggling on the ground. Appellant sliced the strap of Doe's purse with a knife and also caused a deep cut on her upper thigh. Appellant ran off with the purse, leaving Doe behind in the snow.

*Doe's testimony at trial*

{¶3} Appellant and Doe were in an on and off relationship. In January 2018, Doe was pregnant with appellant's child and was due to give birth in a few weeks. She was having health problems and needed to see a liver specialist in Columbus on January 18. Appellant drove her to the appointment in a minivan. The pair attended the appointment and went to Easton, planning to return an item to Macy's. While driving, however, they argued because a woman "friended" appellant on Facebook.

{¶4} Doe lived with her parents. The drive back from Easton took about 45 minutes. Appellant did not return to her parents' driveway, however; instead, he pulled into a driveway some distance away, with a steep hill Doe would have to navigate in the dark. Doe asked appellant if he really intended to make her walk up the steep hill, hugely pregnant, in the snow and ice. Doe started to exit the van, but appellant said "Never mind" and peeled out of the driveway. Alarmed, Doe said "Let me out" and appellant said

"No, you had your chance." Doe said, "I'll get out here" and appellant said, "Why? So I can run over you?" Appellant told Doe she was now going to ride "to town" with him, which she took to mean Newark. Appellant drove fast and Doe could not get out of the van.

{¶5} Doe decided she was better off not arguing with appellant. Appellant drove to a vacant house he knew of in a neighborhood and parked the van. He left the driver's seat, climbed into the back of the van, laid down, and covered himself with a blanket. Doe asked what was wrong and he told her to leave him alone. Doe opened the door to get out of the van and appellant told her to get back in. Appellant took a knife out of a bag he carried, and started slicing the back of the seats in the van. Appellant told Doe, "Get back in here. You're not going to have that baby."

{¶6} Doe jumped out and ran away from the van. She testified that she was in excruciating pain due to her tendons and ligaments stretching around her pelvis. Appellant tackled her and grabbed for her purse. Doe tried to kick him. Appellant used the knife to cut the straps of her purse and also cut a deep gash into Doe's upper thigh. She told him "You just cut me" but appellant didn't respond. He grabbed her purse and ran off. Doe's purse contained her cell phone, medical card, money, and driver's license.

{¶7} Doe ran toward a house where she could see movement through the windows. A woman eventually came to the door and called 911 for Doe. Doe remained on the porch, waiting for an ambulance. Police and medics arrived and immediately attended to Doe because she felt the baby might be in distress. The cut on her leg was tended to after the baby was stabilized. She briefly showed police where the struggle occurred, and they found Doe's cut purse strap in the snow.

{¶8}   Doe was transported to a hospital and despite immediate concern for the welfare of the child, the baby was fine.  Doe gave birth 19 days later.  She was moved to the emergency room to tend to the 6-inch gash on her leg, which was deep and required stitches.

{¶9}   Police searched for appellant that night but were unable to locate him.  A warrant was issued for his arrest.  Doe knew of the existence of the warrant and spoke to appellant several times on the phone while the warrant was active.  Appellant visited Doe and the baby several times and Doe did not call the police, admitting that she hoped to maintain a relationship with him.  Appellee played a recording of a telephone call to Doe from appellant in jail, in which he asked her not to cooperate with law enforcement and to avoid the subpoena.

{¶10} Doe testified she has since changed her mind about appellant because she learned he is still with his wife and has no intention of maintaining a relationship with her.  On cross-examination, Doe admitted she waited in the jail parking lot to see if appellant's wife came to visit him.  Doe acknowledged her parents encouraged her to prosecute appellant and that her parents have a civil protection order against appellant.  Doe acknowledged she has an unrelated conviction of falsification from 2013.

*Testimony of responding officer*

{¶11} Ptl. David Arndt of the Newark Police Department was dispatched to a residence for a domestic violence call and found Doe sitting on the front porch with the homeowner.  Doe was crying and very upset.  Arndt photographed Doe, the gash on her leg, and the cut purse strap in the snow.  Arndt acknowledged the arrest warrant for

appellant was active for several weeks, in part because appellant did not have a stable address.

*Appellant's alibi witnesses*

{¶12} Appellant presented an alibi defense at trial. His adult daughter testified that on January 18, 2018, appellant was living with her and her boyfriend in Roseville, Ohio. The daughter has three children, ages 2, 5, and 7, who also live with her. That day, she knew appellant was traveling to Columbus with Doe, purportedly to obtain a 3-D ultrasound of the unborn baby. The daughter claimed to remember the date because she kept her children home from school that day because they were purportedly excited to see the ultrasound. Her father left for the ultrasound appointment around noon and returned by the time the family ate dinner around 6:00 p.m. After dinner, her father and her boyfriend went four-wheeling for several hours. The pair returned to the trailer around 8:30 p.m. and her father slept there that night. Therefore, the daughter testified, it was not possible that appellant was 45 minutes away in Newark assaulting Doe around 8:00 p.m. on January 18. Upon cross-examination, the daughter said she had no idea there was an active warrant for her father until he was arrested, despite the fact that she had ongoing contact with Jane Doe during the time that police were looking for him. The daughter knew Doe was in a wheelchair but Doe told her she didn't remember what happened and that medics "picked her up off the road."

{¶13} Appellant's daughter's boyfriend also testified on his behalf. He said that on January 18, 2018, he got off work around 3:30, ate dinner around 6:00, and went four-wheeling with appellant from 6:30 to around 8:30. He knew appellant had gone to a

doctor's appointment earlier in the day. Neither he nor his girlfriend spoke to law enforcement about the alibi.

{¶14} The trial court permitted the jury to ask questions of the witnesses, and a juror asked why appellant and his daughter's boyfriend were purportedly four-wheeling in the dark, with snow and ice on the ground. The boyfriend responded that four-wheeling is a year-round activity for them.

{¶15} Appellant also recalled Ptl. Arndt to testify to discrepancies between Doe's testimony and her written and verbal statements on the night of the incident.

*Indictment, trial, and conviction*

{¶16} Appellant was charged by superseding indictment with one count of aggravated robbery pursuant to R.C. 2911.01(A)(1), a felony of the first degree [Count I] and one count of felonious assault pursuant to R.C. 2903.11(A)(2), a felony of the second degree [Count II]. Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty as charged. The trial court found that Counts I and II were allied offenses that merged for purposes of sentencing, and appellee elected to sentence upon Count I. Appellant was sentenced to a prison term of 6 years.

{¶17} Appellant now appeals from the October 5, 2018 Judgment of Sentence of the Licking County Court of Common Pleas.

{¶18} Appellant raises three assignments of error:

## ASSIGNMENTS OF ERROR

{¶19} "I.   THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROVIDE A COMPLETE INSTRUCTION ON THE DEFINITION OF KNOWINGLY AS IT RELATES TO THE CHARGES OF AGGRAVATED ROBBERY AND FELONIOUS ASSAULT."

{¶20} "II. THE JURY'S VERDICT, FINDING GILKEY GUILTY OF AGGRAVATED ROBBERY AND FELONIOUS ASSAULT, IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶21} "III.   THE JURY'S VERDICT, FINDING GILKEY GUILTY OF AGGRAVATED ROBBERY AND FELONIOUS ASSAULT, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

## ANALYSIS

### I.

{¶22} In his first assignment of error, appellant argues the trial court committed plain error in providing an incomplete jury instruction upon the definition of "knowingly." We disagree.

{¶23} Jury instructions are within the sound discretion of the trial court, and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. DeMastry*, 155 Ohio App.3d 110, 2003–Ohio–5588, 799 N.E.2d 229 (5th Dist.), ¶ 54, citing *State v. Musgrave*, 5th Dist. Knox No. 98CA10, 2000 WL 502688 (April 24, 2000), and *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N .E.2d 792 (1988).

{¶24} R.C. 2901.22(B) defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. **When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.** (Emphasis added).

{¶25} Appellant argues the third sentence of the definition, supra, should have been included in the trial court's instruction. Appellant did not object to the jury instruction at trial. The failure to object to a jury instruction waives any claim of error relative thereto unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Lindsay*, 5th Dist. Licking No. 06CA0057, 2007–Ohio–2211, ¶ 30, citing *State v.*

*Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), at syllabus. The "plain error rule" should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice. *Id.* Jury instructions must be reviewed as a whole. *State v. Williams*, 5th Dist. Fairfield No. 14–CA–44, 2015–Ohio–1675, ¶ 29, appeal not allowed, 143 Ohio St.3d 1543, 2015–Ohio–4633, 40 N.E.3d 1180, citing *State v. Coleman,* 37 Ohio St.3d 286, 290, 525 N.E.2d 792(1988).

{¶26} In the instant case, the trial court instructed the jury as follows upon the element of "knowingly:" "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably result in--will probably cause a certain result.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  T. I, 291.  Appellant argues the instruction is flawed because the third sentence of the statutory definition was omitted.

{¶27} The third sentence, however, is only sometimes relevant.  Ohio Jury Instructions defines "knowingly" as follows:

> 1.  KNOWINGLY DEFINED. A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably (cause a certain result) (be of a certain nature). A person has knowledge of circumstances when the person is aware that such circumstances probably exist. (When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.)

Ohio Jury Instructions, CR Section 417.11 (Rev. Jan. 10, 2015).

{¶28} We note that the Committee Comments state in pertinent part: *The Committee believes that the trial court should give the last sentence of this instruction only when knowledge of the existence of a particular fact is an element of the offense. Id.*, emphasis in original.

{¶29} Appellant argues summarily that the purportedly-incomplete instruction prevented the trier of fact from "look[ing] into [appellant's] subjective belief during the incident * * *."  Appellant does not argue that knowledge of a particular fact was an element of either offense in the instant case, nor does he offer any authority in support of his premise that the omission is plain error.

{¶30} We find that the instruction the trial court gave is complete pursuant to the Committee commentary.  The trial court followed the language of the statute and of O.J.I., except for the third sentence which is not always pertinent.  "The instructions found in Ohio Jury Instructions are not mandatory. Rather, they are recommended instructions based primarily upon case law and statutes, crafted by eminent jurists to assist trial judges with correctly and efficiently charging the jury as to the law applicable to a particular case." *State v. Martens*, 90 Ohio App.3d 338, 343, 629 N.E.2d 462 (3rd Dist.1993).

{¶31} Appellant did not provide proposed jury instructions upon the element of "knowingly;" nor did he object to the proposed instruction at trial.  His summary argument on appeal does not explain why the outcome of the trial would have been different if the argued instruction had been given.  We have reviewed the questioned instruction in its

entirety and in the context of the instructions as a whole, and find the trial court did not commit plain error in providing the stated instruction.

{¶32} Therefore, because the trial court's instruction as to "knowingly" provided a correct statement of law and is taken almost verbatim from the Ohio Jury Instructions, the trial court did not err, let alone commit plain error, when it instructed the jury as such. *State v. Harwell*, 2nd Dist. Montgomery No. 25852, 2015-Ohio-2966, ¶ 64. Nor does the instruction constitute an abuse of discretion. *See*, *State v. Ellis*, 5th Dist. Fairfield No. 02CA96, 2004–Ohio–610, ¶ 33.

{¶33} Appellant's first assignment of error is therefore overruled.

II., III.

{¶34} Appellant's second and third assignments of error are related and will be considered together. Appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶35} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶36} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶37} Appellant was found guilty upon one count of aggravated robbery pursuant to R.C. 2911.01(A)(1), which states in pertinent part: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" Appellant was also found guilty upon one count of felonious assault pursuant to R.C. 2903.11(A)(2), which states in pertinent part: "No person shall knowingly [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

{¶38} Appellant makes several arguments why his convictions are against the manifest weight and sufficiency of the evidence. First, he argues he should not have been convicted because his daughter and her boyfriend provided him with an alibi,

contradicting the testimony of appellee's witnesses. The trier of fact was in the best position to adjudge the credibility of witnesses and give proper weight to their testimony. See *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury found the testimony of Jane Doe and Ptl. Arndt persuasive, and the testimony of appellant's alibi witnesses unpersuasive, which is within their province as the finder of fact.

{¶39} Regarding the aggravated robbery conviction, appellant argues he did not permanently deprive Doe of her purse "or for a period that appropriates a substantial portion of its value or use." Although appellant fails to develop this argument with citation to any relevant authority, we infer that he argues appellee did not establish he "deprived" Doe of her purse because she testified that he eventually gave it back to her. We note that R.C. 2913.01(C) defines "deprive" for the purposes of the theft statutes and states:

> "Deprive" means to do any of the following:
>
> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;
>
> (2) Dispose of property so as to make it unlikely that the owner will recover it;
>
> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

{¶40} We disagree with appellant's implication that his eventual return of the purse negated the element of "deprivation." Doe testified that she had to cancel her credit cards and replace the contents of the purse. She suspected appellant's purpose in taking the purse from her was to require her to keep in contact with him, and he succeeded in that purpose as well.

{¶41} Next, appellant argues that the knife he used to cut the purse strap and Doe's leg was not a deadly weapon. Pursuant to R.C. 2923.11(A), a "deadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Appellant cites *State v. Cathel*, 127 Ohio App.3d 408, 411–12, 713 N.E.2d 52 (9th Dist.1998) arguing the record is devoid of evidence that the knife in the instant case was a deadly weapon. In context, however, *Cathel* states the following:

Contrary to the trial court's pronouncement, a knife is not considered "in and of itself" to be a deadly weapon under the statute. "[A] knife is not presumed to be a deadly weapon, even if it is concealed." *Columbus v. Dawson* 1986), 28 Ohio App.3d 45, 46, 28 OBR 56, 57, 501 N.E.2d 677, 678. Further, the trial court noted that the trial produced "no indication that the * * * knife was being used for * * * any type of purpose other than to be used as a weapon." Contrary to the trial court's implication, it is not a defendant's burden to negate the elements of a crime; it is the state's burden to prove them. To convict Cathel of carrying a deadly weapon, the state must prove either (1) that the knife was designed or specifically adapted

for use as a weapon, or (2) that the defendant possessed, carried, or used the knife as a weapon. *Id.*

*State v. Cathel*, 127 Ohio App.3d 408, 411–12, 713 N.E.2d 52 (9th Dist.1998).

{¶42} The instant case is distinguishable from *Cathel* because appellee presented evidence that appellant possessed, carried, and used the knife as a weapon: Doe testified that he brandished it as he threatened her to get back into the van while stating "You're not going to have that baby," and that he used it to cut her purse away from her as they struggled on the ground. During that struggle, appellant deeply cut Doe's leg with the knife. We find appellee established in the instant case that the knife was used by appellant as a deadly weapon.

{¶43} Finally, appellant argues Doe's testimony was not credible because her statements were contradicted by the alibi witnesses; she has been convicted of falsification in the past; and she has a motive to lie because she is bitter that appellant stayed with his wife. As noted supra, the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶44} We have thoroughly reviewed the record of this case and the exhibits. Appellee's evidence established appellant cut the strap of Doe's purse and her leg, ran off, and left her in the snow. The witnesses' testimony is buttressed by the physical evidence of the photographs taken by Arndt on the night of the incident. Viewing the evidence in the light most favorable to appellee, the evidence supports appellant's convictions for aggravated robbery and felonious assault. We further note the jury

evidently did not lose its way in considering the evidence and create a manifest miscarriage of justice.

{¶45} We conclude appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's second and third assignments of error are overruled.

**CONCLUSION**

{¶46} Appellant's three assignments of error are overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.