[Cite as *State v. Garrett*, 2010-Ohio-1550.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 08-BE-32 |
| | ) | |
| TOM JEFFERY GARRETT, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from Court of Common
                                                          Pleas of Belmont County, Ohio
                                                          Case No. 08CR0145

JUDGMENT:                                       Affirmed

APPEARANCES:
For Plaintiff-Appellee                          Attorney Helen Yonak
                                                          Assistant Prosecuting Attorney
                                                          Belmont County Prosecutor's Office
                                                          147 West Main Street
                                                          St. Clairsville, Ohio 43950

For Defendant-Appellant                     Attorney Jeremy J. Masters
                                                          Assistant State Public Defender
                                                          250 East Broad Street, Suite 1400
                                                          Columbus, Ohio 43215

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: March 30, 2010

DONOFRIO, J.

{¶1} Defendant-appellant Tom Jeffery Garrett appeals his conviction and sentence for rape, sexual battery, and three counts of gross sexual imposition. Garrett was convicted following a jury trial and sentenced by the trial court to 30 years in prison. On appeal, he alleges error in: (1) his conviction on two of the three gross sexual imposition counts because the evidence produced at trial insufficiently differentiated among the three identically worded counts contained in the indictment and (2) imposition of court costs without notifying him that failure to pay them could result in the imposition of community service.

{¶2} A Belmont County grand jury indicted Garrett on three counts of gross sexual imposition, three counts of rape, and one count of sexual battery in connection with a pattern of sexual abuse he inflicted on his step-daughter from the time she was just 5 years old until after she turned 13. Each of the gross sexual imposition counts was worded identically:

{¶3} "On or about July 30, 1998 through March 2006 at Wheeling Township, Belmont County, Ohio, Tom Jeffery Garrett did have sexual contact with another, to-wit: [L.N.G.], not the spouse of the offender and said person being less than thirteen years of age, whether or not the offender knows the age of said person. All in violation of Ohio Revised Code Section 2907.05(A)(4)."

{¶4} In a subsequent bill of particulars, the state explained that the sexual abuse began around July 30, 1998, when L.N.G. was 5 years old. Garrett would enter the room wherever L.N.G. happened to be sleeping and would pull her pajamas off and touch her breast area and vagina with his fingers. Before L.N.G.'s 10th birthday, Garrett would also insert his fingers into her vagina and perform oral sex upon her while he believed she was asleep. This abuse continued on a regular basis and progressed to Garrett inserting his penis partway into L.N.G.'s vagina, stopping when he felt resistance or when L.N.G. would open her eyes. After L.N.G. began to menstruate at the age of 13, the abuse tapered off, occurring once or twice a month with Garrett returning to oral sex and digital penetration. L.N.G. disclosed the abuse

to a friend who in turn reported it to Children Services. Upon questioning by a Belmont County Sheriff's Department detective, Garrett admitted the abuse without explanation.

{¶5} The case proceeded to a jury trial on August 28, 2008. The state presented the testimony of persons who investigated the case and the victim herself, L.N.G., who testified to abuse consistent with that already mentioned in the bill of particulars. On the defense side, Garrett testified in his own behalf, denying the abuse occurred and asserting that he confessed because he was scared by the allegations and intimidated by the detective's position of authority. The jury found Garrett guilty of the three counts of gross sexual imposition, one of the three counts of rape, and the one count of sexual battery. The jury found Garrett not guilty of two of the three counts of rape. The trial court sentenced Garrett to 5 years in prison on each of the gross sexual imposition counts, 5 years for sexual battery, and 10 years for rape for an aggregate sentence of 30 years. This appeal followed.

{¶6} Garrett sets forth two assignments of error, the first of which states:

{¶7} "The trial court erred by convicting Mr. Garrett based upon multiple, identical, and undifferentiated counts of a single offense, denying him due process of law and violating the Double Jeopardy Clause. Fifth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution. (September 26, 2008 Transcript, pp. 14-15); (September 29, 2008 Judgment Entry of Sentence, pp. 4-5)."

{¶8} The issue presented for review under this assignment of error states:

{¶9} "Did the trial court err by convicting Mr. Garrett of three counts of gross sexual imposition, based upon three identically worded counts in his indictment, in the absence of evidence produced at trial to differentiate those counts?"

{¶10} Garret argues that he was denied due process of law and his right to be protected from double jeopardy because he was convicted of three identical and undifferentiated counts of gross sexual imposition. Citing *Valentine v. Konteh* (C.A.6 2005), 395 F.3d 626.

{¶11} The Sixth Amendment to the United States Constitution states in part that "[i]n all criminal prosecutions, the accused shall * * * be informed of the nature and cause of the accusation." In order for an indictment to be constitutionally sound it must contain "the elements of the offense charged and fairly inform a defendant of the charge against which he must defend, and, second, enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States* (1974), 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590; See, also, *State v. Childs* (2000), 88 Ohio St.3d 558, 565, 728 N.E.2d 379.

{¶12} In *Valentine*, the federal Sixth Circuit Court of Appeals examined the due process and double jeopardy implications of a conviction based on an indictment that consisted of multiple, identical and undifferentiated counts. Valentine was charged with twenty counts of rape and twenty counts of felonious sexual penetration in connection with a pattern of sexual abuse against his eight-year-old stepdaughter. Each of the twenty rape counts and each of the twenty felonious sexual penetration counts were identically worded and identified the same approximate ten-month time frame of occurrence. A bill of particulars offered no further differentiation among the counts and identified the family home as the location of all forty offenses.

{¶13} According to the Sixth Circuit majority, the victim's testimony provided no further differentiation. "She testified that Valentine forced her to perform fellatio in the family living room on 'about twenty' occasions and that Valentine digitally penetrated her vagina in the family living room on 'about fifteen' occasions. The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom. She additionally testified that Valentine achieved anal penetration with his penis on 'about ten' occasions. As the Petitioner points out, the victim altered her numbers somewhat during cross-examination." *Valentine*, 395 F.3d at 629.

{¶14} Valentine was tried and convicted on all counts and sentenced to forty life sentences. The Ohio Court of Appeals affirmed the twenty rape convictions, but only fifteen of the felonious sexual penetration convictions, reversing five of those

counts based on insufficient evidence. The Ohio Supreme Court denied leave to appeal and Valentine was unsuccessful in postconviction proceedings. The federal district court for the Northern District of Ohio granted Valentine's writ of habeas corpus concluding that the indictment was constitutionally insufficient. The federal Sixth Circuit Court of Appeals affirmed with respect to nineteen counts of rape and nineteen counts of felonious sexual penetration, but reversed finding the constitutional error harmless with respect to one count each of rape and felonious sexual penetration.

{¶15} Citing *Hamling*, supra, and other cases, the Sixth Circuit succinctly identified the three requirements of a sufficient indictment: (1) identification of the elements of the offense; (2) notice of the charges; and (3) protection against double jeopardy. There was no dispute that the indictment satisfied the first requirement by setting out the elements of the offense. The problem arose with the second and third requirements. Regarding the notice requirement applied to Valentine's case, the court observed:

{¶16} "The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described 'typical' abusive behavior by Valentine and then testified that the 'typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.

{¶17} "Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20. Nor could the jury

have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents. The jury could have found him 'not guilty' of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

{¶18} "As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself." *Valentine*, 395 F.3d at 632-633.

{¶19} The court had similar concerns with Valentine's ability to protect himself from double jeopardy:

{¶20} "In this case, there was no specificity regarding the factual offenses Valentine allegedly committed. If Valentine had been acquitted of these 40 charges, it is unclear what limitations would have been imposed on his re-indictment. Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury. If Valentine had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents." *Valentine*, 395 F.3d at 635.

{¶21} Following *Valentine*, in cases involving multiple undifferentiated counts of sexual assault and abuse, various Ohio Courts of Appeals decisions either distinguished or analogized it to the case at hand depending on the evidence presented. The Eighth District Court of Appeals has had numerous occasions to address the import of *Valentine*. Garrett and the state each cite to different Eighth

District cases in support of their respective positions. Garrett analogizes his case to the Eighth District Court of Appeal's case where all but one conviction for gross sexual imposition was vacated based upon an application of *Valentine*. *State v. Hemphill*, 8th Dist. No. 85431, 2005-Ohio-3726. Hemphill was indicted on 33 counts of gross sexual imposition, along with multiple counts of other offenses. Concerning the gross sexual imposition counts, the state presented the testimony of the victim who stated that Hemphill rubbed her chest "[a]ny chance he got." As for actual numbers or specific testimony, the only additional testimony was when the state asked her, "Would he – did he touch your breast at least 33 times?" and she replied, "Yes."

**{¶22}** The Eighth District concluded that this testimony alone was insufficient to support the multiple counts indicted, explaining:

**{¶23}** "Although we can appreciate the difficulty of prosecuting a case involving a reticent victim who appears to be unsupported by her family, this cannot lessen the state's burden of proof as to each individual offense. Accordingly, inasmuch as our analysis is governed by the Court's holding in *Valentine,* supra, we cannot accept the numerical estimate which is unconnected to individual, distinguishable incidents. We therefore find that there is an insufficient factual basis for defendant's convictions on these unspecified offenses.

**{¶24}** "Our further review of the record establishes, however, that a rational trier of fact could have found the essential elements of gross sexual imposition beyond a reasonable doubt, from the first incident (involving defendant's request to get him socks).

**{¶25}** "* * *

**{¶26}** "Accordingly, defendant's conviction for one count of gross sexual imposition, one count of rape of a girl under thirteen with the furthermore clause alleging force, and one count of rape with the furthermore clause alleging force, are all supported by sufficient evidence. We hereby vacate defendant's convictions for the remaining offenses." Id. at ¶¶88-89, 93.

{¶27} In this case, Garrett's reliance on *Valentine* is misplaced. Indeed, in many important respects, Garrett's case is the very antithesis of *Valentine* for four reasons: (1) how the indictment was framed; (2) the bill of particulars; (3) how the case was presented to the jury; and (4) the evidence presented at trial.

{¶28} First, unlike in *Valentine* where the defendant was indicted for forty offenses for a time period spanning only ten and half months, Garrett was indicted for only seven offenses spanning a time period of over eight years. Given L.N.G.'s allegation that Garrett began touching her when she was four or five years old and continued this type of sexual abuse once or twice a month until the abuse changed when she was ten or eleven, the state could have easily charged anywhere from 60 to 168 counts of gross sexual imposition. Instead, the state charged Garrett with only three counts of gross sexual imposition. The family had moved from California to Belmont County in 1997, when L.N.G. was four or five years old. (Tr. 183-184.) The family moved again in 2000 to another house in Belmont County. (Tr. 184.) The three counts of gross sexual imposition appear to have been divided between the two different locales in Belmont County (e.g., one count for the abuse when it began at the first home and the remaining two counts for the abuse that continued at the second home).

{¶29} Second, unlike in *Valentine*, there was a bill of particulars in this case that further differentiated the counts in the indictment. On July 30, 1998, the state filed a of bill of particulars that read:

{¶30} "On or about July 30, 1998, starting when the victim, [L.N.G.], was 5 years old, the Defendant would enter her bedroom or wherever she was sleeping; and pull her pajamas off and touch her breast area and vagina with his fingers. Prior to victim's 10th birthday, he would insert his fingers into her vagina and perform oral sex upon her while he believed she was asleep.

{¶31} "This continued on a regular basis, and progresses to the Defendant inserting his penis partway into the victim's vagina, stopping when he felt any resistance, of [sic] if the victim opened her eyes.

**{¶32}** "After the victim started to menstruate, at age 13, the Defendant returned to oral sex and digital penetration, and tapered off to once or twice a month.

**{¶33}** "The victim disclosed the abuse to a friend, who reported it to Children Services.

**{¶34}** "Defendant was questioned by Belmont Count [sic] Sheriff's Department Detective Ryan Allar, and admitted he did these things to his step-daughter, but didn't know why.

**{¶35}** "On June 4, 2008, the Defendant was indicted by the Belmont County Grand Jury.

**{¶36}** "State incorporates all other evidence from discovery previously provided."

**{¶37}** Unlike the indictment in *Valentine*, the bill of particulars here did not "merely restate" the allegations contained in the indictment. *Valentine v. Konteh* (C.A.6 2005), 395 F.3d 629. The bill of particulars in this case explicitly detailed the type of sexual contact and conduct involved, how it started, when it changed at different ages, and how long it continued.

**{¶38}** Third, the case was presented to the jury consistent with how the case was indicted. In its opening statement to the jury, the state conveyed the conservative approach it had taken to the case:

**{¶39}** "There are seven counts in the Indictment spanning 1998 to -- until 2006. Eight years. I believe it's helpful for me now to explain to you why the State indicted the defendant in this time frame, from [L.N.G.'s] birthday at age 5 until 12 years old.

**{¶40}** "[L.N.G.] is going to testify today that the abuse started when she was around 4 or 5. So we took the latter date of age 5. [L.N.G.] is going to testify that this abuse went on from the time she was 5 years old until she was 12 or 13. Again, we took the lower date.

**{¶41}** "* * *

{¶42} "Counts I, II, and III are the gross sexual imposition, the touching of a person's private parts -- in this case her vagina and her breasts -- of a child. [L.N.G.] will tell you that this went on, on a periodic basis, you know, roughly once or twice a month, maybe, from the time she was 5 until she was around 10 or 11.

{¶43} "* * *

{¶44} "There's three counts for gross sexual imposition. The touching of [L.N.G.] from age 5 to 12. There's three counts of rape of a child less than 13, when [L.N.G.] was 10 or 11. And there's one count of sexual battery for the defendant having sex with his stepdaughter. Seven counts for eight years of continuous abuse. Some states like to indict for everything ever committed. We have not done that in this case. Those are for -- they make great news. They make great TV copy. They make great headlines. We're not interested in news or headlines. We're interested in justice for [L.N.G.]" (Tr. 148, 149, 152.)

{¶45} Garrett's trial counsel acknowledged, "[T]he government has been very judicious. They've only indicted seven counts when they could have indicted 700." (Tr. 153.)

{¶46} Fourth, the evidence the state presented at trial was consistent with the indictment and bill of particulars. L.N.G. testified that Garrett began touching her when she was four or five years old at their first home in Belmont County, Ohio after they moved from California. (Tr. 184, 188.) The abuse continued when they moved into their second home in Belmont County in 2000. (Tr. 184, 188.)

{¶47} In sum, Garrett was not denied due process of law and was protected from double jeopardy. The three counts of gross sexual imposition he was convicted of were not identical and undifferentiated. Garrett was indicted for only a small fraction of the offenses for which he could have been, based on the victim's allegation of a sustained and continual pattern of sexual abuse. The bill of particulars further differentiated those counts by explicitly detailing the type of sexual contact and conduct and describing at what ages which type of abuse occurred. At trial, the victim differentiated those counts further by explaining that the abuse had occurred in

two different homes. Garrett was not prosecuted for one criminal act that occurred three times each; rather, he was convicted for three separate criminal acts.

**{¶48}** Accordingly, Garrett's first assignment of error is without merit.

**{¶49}** Garrett's second assignment of error states:

**{¶50}** "The trial court erred by imposing court costs without notifying Tom Garrett that failure to pay court costs may result in the court's ordering him to perform community service. (September 26, 2008 Transcript, pp. 17-18); (September 29, 2008 Judgment Entry of Sentence, p. 7)."

**{¶51}** The issue presented for review under this assignment of error states:

**{¶52}** "Did the trial court err by failing to notify Mr. Garrett that failure to pay court costs could result in the court's ordering him to perform community service, up to forty hours per month, at a specified hourly credit rate per hour of community service, until the court is satisfied that he is in compliance with an approved payment schedule or his court costs have been satisfied through his community service?"

**{¶53}** A trial court may order an indigent defendant to pay court costs as part of his sentence. *State v. Roux*, 154 Ohio App.3d 296, 2003-Ohio-4876, 797 N.E.2d 112. In criminal cases, court costs and the imposition of community service upon default are governed by R.C. 2947.23, which provides as follows:

**{¶54}** "(A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate *shall notify* the defendant of both of the following:

**{¶55}** "(a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.

{¶56} "(b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount." (Emphasis added.)

{¶57} A review of the transcript and judgment entry confirms that the trial court ordered Garrett to pay costs. However, it did not notify him that failure to do so could result in the imposition of community service, as provided by R.C. 2947.23(A)(1)(a).

{¶58} Garrett relies on *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, in which the Ohio Supreme Court acknowledged that the trial court must notify the defendant, at the time of sentencing, that a failure to pay judgment costs may result in the imposition of community service. In *Clevenger*, the trial court chose to suspend properly imposed court costs because of the defendant's financial status. The Court held that the trial court had no authority to suspend the payment of court costs previously imposed by it on a criminal defendant.

{¶59} Here, unlike the facts in *Clevenger*, supra, the trial court did not suspend Garrett's court costs. Instead, the trial court imposed court costs, but did so in a manner inconsistent with R.C. 2947.23(A)(1)(a).

{¶60} In *State v. Boice*, 4th Dist. No. 08CA24, 2009-Ohio-1755, the Fourth District faced an argument similar to the one raised here. In *Boice*, the trial court imposed court costs on a defendant who pled guilty to aggravated burglary. Id. at ¶1. The defendant asserted the trial court erred when it imposed court costs without notifying him that failure to pay court costs could result in the imposition of community service. Id. The defendant raised this issue for the first time on appeal, even before he failed to make his first payment of court costs. Id. The court concluded that although they "agree with Appellant that R.C. 2947.23 makes it mandatory for the Judge to inform a defendant that he could be ordered to perform community service, at [the time the appeal was brought], Appellant has not suffered any prejudice from the trial court's failure to inform him that it may, in the future, require him to perform

community service to fulfill his obligation to pay costs." Id. at ¶11. The court held the issue is not ripe for adjudication. *Boice* at ¶11. See, also, *State v. Slonaker*, 4th Dist. No. 08CA21, 2008-Ohio-7009, at ¶7 (concluding an identical appeal was not ripe for adjudication), *State v. Ward*, 168 Ohio App.3d 701, 714, 2006-Ohio-4847, 861 N.E.2d 823 (4th Dist.) (declining to address an identical issue because it was not properly raised, and because the appellant had suffered no prejudice because of error and, therefore, the matter was not ripe for adjudication). This court has also held that the issue is not ripe for adjudication. *State v. Walters*, 7th Dist. No. 08-CO-34, 2009-Ohio-6762.

**{¶61}** Here, similar to *Boice*, Garrett raises this issue on appeal and has yet to default on his payment of court costs or fines. Like *Boice*, Garrett has not yet suffered any prejudice because of the error and, therefore, the issue is not ripe for adjudication. Further, as in *Boice* and *Slonaker*, should Garrett, at some point in the future, fail to pay costs as ordered; the trial court should not have the option of imposing community service because it did not inform the appellant of this possibility at his sentencing hearing. See *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837 (addressing an issue, ripe for adjudication, and remanding the case to the trial court because the required notifications were not supplied at sentencing). In *Brooks*, during sentencing, the trial court did not notify the defendant that a prison term might be imposed if he violated the terms of his community control sanction, as required by R.C. 2929.19. Id. at ¶1. The appeal was brought after Brooks pled guilty to violating the terms of his community control and was sentenced to eight months in prison. Id. Here, in contrast, Garrett has yet to default on his payments and, therefore, has not been ordered to perform community service, thus not making this issue ripe for adjudication. *Walters*, supra.

**{¶62}** Accordingly, Garrett's second assignment of error is without merit.

**{¶63}** The judgment of the trial court is affirmed.

Vukovich, P.J., concurs.

Waite, J., concurs.