The STATE of Ohio, Appellee,

v.

WARD, Appellant.

[Cite as *State v. Ward,* 168 Ohio App.3d 701, 2006-Ohio-4847.]

Court of Appeals of Ohio,
Fourth District, Washington County.

No. 05CA3.

Decided Sept. 13, 2006.

702

James W. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Assistant Prosecuting Attorney, for appellee.

David H. Bodiker, State Public Defender, and Theresa G. Haire, Assistant State Public Defender, for appellant.

---

KLINE, Judge.

{¶ 1} Brenda S. Ward appeals the Washington County Court of Common Pleas' judgment finding her guilty of felonious assault. Ward contends that the record does not contain sufficient evidence to support her conviction. Because we find that the record contains evidence which, if believed, supports a finding that Ward knowingly caused physical harm to her victim with a deadly weapon, we disagree. Ward also contends that the trial court erred and caused her prejudice by giving a self-defense jury instruction that implied that she had a duty to retreat. Ward

did not object to the instruction, but we find plain error and exercise our discretion to reverse the conviction and remand for a new trial in order to prevent a manifest miscarriage of justice. Finally, Ward contends that the trial court erred by ordering her to pay the costs of the prosecution without first considering her ability to pay. Because a trial court must assess court costs in every criminal case regardless of the defendant's ability to pay, we disagree. Accordingly, we overrule two of Ward's assignments of error, sustain one of her assignments of error, and reverse the judgment of the trial court.

I

{¶ 2} On June 11, 2004, Ward sliced open the abdomen of her boyfriend, Tracy McConnell, with an eight-inch serrated knife. On the night of the incident, Ward gave a recorded statement to Washington County Sheriff's Detective Fred Sirianni. During her conversation with Det. Sirianni, Ward told him three different versions of what happened when McConnell was stabbed. First, she stated that McConnell simply came into the living room from the kitchen bleeding. Later, she said that he came inside from the porch and told her that she had stabbed him, though he had done it himself. Finally, she told Det. Sirianni that McConnell came at her with the knife, and she turned it around and pushed it into him.

{¶ 3} In addition to these versions of the events on June 11, 2004, Ward related several other incidents to Det. Sirianni. In particular, Ward told Det. Sirianni that McConnell recently pushed her and split her ear open. She then told McConnell that if he ever laid a hand on her again, she would kill him. When Det. Sirianni asked if McConnell had become violent with her just prior to the stabbing, she replied that he had not, because "[h]e knows better." She also told Det. Sirianni that she had stabbed McConnell in the leg before and that both the knife and McConnell's pants from that incident were still in the sheriff's evidence room. Ward informed Det. Sirianni that she and McConnell frequently have violent fights when they drink and that "usually it's me [Ward] going in there [the kitchen] after the knife." Finally, Ward stated to Det. Sirianni that "[h]e knows when I get serious like that, I'll take and kill him in a heartbeat. He knows my background."

{¶ 4} The Washington County Grand Jury indicted Ward on two counts of felonious assault. Count one of the indictment alleged that Ward violated R.C. 2903.11(A)(1) by knowingly causing serious physical harm to another. Count two alleged that she violated R.C. 2903.11(A)(2) by causing or attempting to cause physical harm to another by means of a deadly weapon. Ward pleaded not guilty, and the case proceeded to a jury trial.

{¶ 5} The trial testimony revealed that Ward and McConnell lived together in McConnell's trailer in Newport, Ohio, for about eight years. McConnell and Ward each testified that they often fought, especially when one or both of them had been drinking, and that the fights frequently became violent. McConnell testified that sometimes he was the aggressor and sometimes Ward was the aggressor.

{¶ 6} McConnell testified that Ward threatened him with knives on several occasions and that he had a scar from an incident when Ward threatened him with a knife and he took it from her. Additionally, McConnell testified that he had to get stitches in his leg after Ward stabbed him on a prior occasion and that he told police he stabbed himself in order to protect Ward. McConnell admitted that he threw knives at the wall during an argument once. When Ward testified about the same incident, she said that as McConnell threw the knives he yelled, "Well, I can take and throw knives too."

{¶ 7} McConnell testified that on the afternoon of June 11, he and Ward purchased a case of beer. They brought it home and, by evening, had consumed most of it. He was very intoxicated. He told Ward that the last four beers were his. Ward got up and went into the kitchen. He followed her, and approached her from behind as she was looking into the refrigerator. Ward turned around and cut him as he stepped up to the refrigerator. McConnell testified that he did not even know that Ward had a knife before she cut him and that she had not threatened him prior to stabbing him that evening.

{¶ 8} McConnell and Ward had no telephone at the trailer. After the stabbing, McConnell left the trailer to call 911 from a neighbor's house. Ward went to bed, and was awakened by sheriff's detectives later that night.

{¶ 9} The state played the audio recording of Ward's statement to Det. Sirianni for the jury. At the close of the state's case-in-chief, Ward moved for acquittal. The trial court denied the motion.

{¶ 10} Ward testified that she and McConnell were sitting in their chairs watching television and drinking beer when he suddenly became enraged. According to Ward's trial testimony, McConnell attacked her with the knife while she was sitting in her chair. A coffee table and the wall blocked her into the chair so that she had no means of escape, and she feared for her life. She claimed she pushed McConnell's knife hand away and, in doing so, she apparently struck him.

{¶ 11} The trial court gave the following jury instruction with regard to self-defense: "To establish self defense, the Defendant must prove that she was not at fault in creating the situation that gave rise to the incident and that the Defendant has reasonable grounds to believe and an honest belief, even though

mistaken, that she was in immediate danger of serious bodily harm or death, and that her only means to protect herself from such danger, was by the use of deadly force.  * * * In deciding whether a defendant has reasonable grounds to believe, and an honest belief that she was in immediate danger of death or great bodily harm, you must put yourself in the position of this Defendant, with her characteristics and her knowledge or lack of knowledge, and under the circumstances and conditions that surrounded her at the time.  You must consider the conduct of Tracy N. McConnell and decide if his acts and words caused the Defendant to reasonably and honest to believe—honestly to believe, that she was about to receive serious bodily harm.

{¶ 12} "Now, the law does not measure nicely the degree of force which may be used to repel an attack.  However, if the Defendant uses more force than reasonably appears to be necessary under the circumstances, and if the force used is so grossly disproportionate to her danger—that should be 'her danger'—apparent danger, as to show an unreasonable purpose to injure Tracy McConnell, then the defense of self eve—self defense is not available."

{¶ 13} The jury found Ward not guilty of count one, but guilty of count two of the indictment.  The trial court entered a judgment of conviction and sentenced Ward to serve two years in prison and three years of postrelease control, and to pay the costs of the prosecution.  Ward appeals, asserting the following assignments of error: "I. The trial court erred in denying Ward's motion for acquittal because there was insufficient evidence to prove that she was guilty of felonious assault as alleged in Count 2 of the indictment.  Ward's conviction thus violates due process.  II. The trial court erred by ordering Ward to pay the costs of the prosecution without first considering Ward's present and future ability to pay the amount of the financial sanction.  III. The trial court erred in its instructions to the jury on the law of self defense and defense of property, and thereby deprived Ms. Ward of her right to a fair trial before a properly instructed jury, and her right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution."

## II

{¶ 14} In her first assignment of error, Ward contends that the record does not contain sufficient evidence that she knowingly caused McConnell harm by means of a deadly weapon.  In particular, Ward argues that the state failed to show that the knife she used to cut McConnell is a deadly weapon.  Additionally, Ward contends that the state failed to prove that she "knowingly" used the knife to cause physical harm to McConnell.

{¶ 15} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Rather, this test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact. *State v. Thomas* (1982), 70 Ohio St.2d 79, 79–80, 24 O.O.3d 150, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 16} R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code." Pursuant to R.C. 2901.22, "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Ward notes that the fact that a knife is capable of inflicting death does not necessarily mean that it is a deadly weapon. *State v. Cathel* (1998), 127 Ohio App.3d 408, 411, 713 N.E.2d 52. The state must also show "either (1) that the knife was designed or specifically adapted for use as a weapon, or (2) that the defendant possessed, carried, or used the knife as a weapon." Id. at 412, 713 N.E.2d 52, citing *Columbus v. Dawson* (1986), 28 Ohio App.3d 45, 46, 28 OBR 56, 501 N.E.2d 677.

{¶ 17} Ward contends that the state failed to prove beyond a reasonable doubt that she acted knowingly. The state presented evidence that (1) Ward knifed the victim in the leg on a prior occasion, (2) Ward threatened to kill the victim a couple of weeks earlier, (3) Ward armed herself with a knife before the assault, and (4) Ward used the knife to cut the victim across the chest. We

conclude that this evidence, if believed, tends to show that Ward was aware that her conduct would probably cause a certain result.

{¶ 18} Ward also contends that the state failed to prove beyond a reasonable doubt that the knife was a deadly weapon. She relies upon McConnell's testimony that she had never threatened him with the knife before she cut him and that he never saw the knife. Additionally, Ward points to McConnell's testimony as evidence that Ward did not make a stabbing or thrusting motion and did not say anything to indicate that she intended to use the knife as a deadly weapon.

{¶ 19} In *Cathel,* the court found that the state failed to prove that the defendant possessed a weapon when the defendant had a pocket knife in his pocket at the time of his arrest. The court noted that the defendant did not brandish the knife, that the knife was closed in his pocket, and that the knife required two hands to open. Thus, the court concluded that the state did not produce any evidence that the defendant possessed, carried, or used the knife as a weapon. The court also found that the state failed to present any evidence that the knife was designed or specifically adapted for use as a weapon.

{¶ 20} Here, in contrast, the state presented evidence that Ward actually used the knife as a weapon. Specifically, the simple fact that Ward's use of the knife resulted in McConnell suffering a deep stab wound constitutes some competent, credible evidence that Ward used the knife as a weapon. Additionally, the record contains evidence that (1) Ward threatened to kill McConnell a few weeks prior to the stabbing, (2) Ward threatened to stab McConnell on many occasions, and (3) Ward actually stabbed McConnell in the leg once and the resulting injury required stitches. The testimony also revealed that Ward and McConnell frequently have violent fights when they drink, which, according to Ward's own statement, "usually" result in Ward going into the kitchen to get a knife. The record contains unrefuted evidence that Ward and McConnell consumed nearly a case of beer during the hours preceding the stabbing. Finally, the record contains evidence that Ward may have been angry at McConnell, because he announced immediately prior to the stabbing that the last four beers from their case were his.

{¶ 21} Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the state proved beyond a reasonable doubt that Ward acted in a manner which she was aware would probably cause physical harm to McConnell, and that she caused him physical harm by means of a knife that she possessed, carried, or used as a weapon. Thus, we find that the record contains sufficient evidence to support Ward's conviction. Accordingly, we overrule Ward's first assignment of error.

## III

{¶ 22} In her third assignment of error, Ward contends that the trial court committed prejudicial error when it instructed the jury in accordance with Ohio's pattern jury instructions on self-defense. In particular, Ward contends that the jury instructions improperly implied that she had a duty to retreat. The state contends that the duty to retreat was not an issue in this case, and, therefore, to the extent that the jury instructions imply a duty to retreat, the error is harmless.

{¶ 23} Ward concedes that she did not object to the trial court's jury instructions. "[A] party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). However, even when a defendant fails to raise a timely and proper objection to an error affecting a substantial right, we may notice the error pursuant to Crim.R. 52(B).

{¶ 24} "By its very terms, [Crim.R. 52(B)] places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. First, the reviewing court must find that the trial court erred, i.e., deviated from a legal rule. Id., citing *State v. Hill* (2001), 92 Ohio St.3d 191, 200, 749 N.E.2d 274, and *United States v. Olano* (1993), 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (interpreting Crim.R. 52(B)'s identical federal counterpart, Fed. R.Crim.P. 52(b)).

{¶ 25} Second, the error must be plain. *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240. "[A]n error cannot be deemed plain if there is no controlling case law on point and the authority in other circuits is split." *State v. McKee* (2002), 91 Ohio St.3d 292, 300, 744 N.E.2d 737 (Cook, J., dissenting), citing *United States v. Aguillard* (C.A.11, 2000), 217 F.3d 1319, 1321; *United States v. Thompson* (C.A.9, 1996), 82 F.3d 849, 855; *United States v. Alli–Balogun* (C.A.2, 1995), 72 F.3d 9, 12; *United States v. Williams* (C.A.6, 1995), 53 F.3d 769, 772. If the law on a particular issue is unclear at the time of trial and remains that way at the time of appeal, the error cannot be plain and should not be noticed under Crim.R. 52(B). Id., citing *United States v. David* (C.A.4, 1996), 83 F.3d 638, 642–643. However, we may recognize an error as plain, even though it was not clear at the time of trial, as long as it is clear at the time of appellate consideration. *Johnson v. United States* (1997), 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718; see, also, *McKee* at 300, 744 N.E.2d 737.

{¶ 26} Finally, the trial court's error must have affected the accused's "substantial rights." *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240. The Ohio

Supreme Court has interpreted this element of the rule to require a finding that the error affected the outcome of the trial. Id., citing *Hill,* 92 Ohio St.3d at 205, 749 N.E.2d 274; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 27} Even if a reviewing court finds that a forfeited error satisfies all three prongs of the test, the court is not required to notice the error. *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240. Rather, the court retains discretion to decide whether it should correct the error. Id. A reviewing court should use its discretion under Crim.R. 52(B) to notice plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *Long,* 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus, and citing *Olano,* 507 U.S. at 736, 113 S.Ct. 1770, 123 L.Ed.2d 508. The United States Supreme Court has opined that a finding of plain error is not limited to cases of actual innocence. Id. at 736, 113 S.Ct. 1770, 123 L.Ed.2d 508. An error may " 'seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." Id. at 736–737, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555.

{¶ 28} The law requires a trial court to give the jury all instructions that are relevant and necessary for the jury to properly weigh the evidence and reach their verdict as the fact finder. *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. The jury instructions "must be based upon the actual issues in the case as presented by the evidence." *State v. Tompkins* (Oct. 25, 1996), Clark App. No. 95–CA–0099, 1996 WL 612855, citing *State v. Scimemi* (June 2, 1995), Clark App. No. 94–CA–58, 1995 WL 329031. It must be possible that "reasonable minds might reach the conclusion sought by the instruction." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828. It is within the sound discretion of the trial court to determine whether the evidence presented at trial is sufficient to require a particular jury instruction. See, e.g., *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus.

{¶ 29} When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. See *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165; see, also, *State v. Coe,* 153 Ohio App.3d 44, 790 N.E.2d 1222, 2003-Ohio-2732. We must not reverse a conviction due to error in the jury instructions unless the

error is so prejudicial that it may induce an erroneous verdict. See *Parma Hts. v. Jaros* (1990), 69 Ohio App.3d 623, 630, 591 N.E.2d 726; *State v. Speakman* (Mar. 27, 2001), Pickaway App. No. 00CA035, 2001 WL 315198.

{¶ 30} In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, 12 O.O.3d 84, paragraph two of the syllabus. The defendant must prove these elements by a preponderance of the evidence in order to demonstrate self-defense. *Williford* at 249, 551 N.E.2d 1279. "There is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home." *State v. Thomas* (1997), 77 Ohio St.3d 323, 673 N.E.2d 1339, syllabus.

{¶ 31} In *State v. Maine*, Washington App. No. 04CA46, 2005-Ohio-3742, 2005 WL 1713371, the trial court instructed the jury that in order to prove self-defense on the allegation that he committed domestic violence, the defendant needed to prove that he believed that "he was in imminent danger of bodily harm, *and that his only means to protect himself from such danger was by the use of force.*" (Emphasis sic.) We found that, even though the trial court based its instruction upon the Ohio pattern jury instructions, the instruction misstated the law with regard to self-defense. Id. at ¶ 17. Specifically, we found that this instruction implied a duty to retreat where the defendant had no such duty.[1] Therefore, we found that the trial court erred in instructing the jury.

{¶ 32} Because Ward was in her own home at the time McConnell allegedly attacked her, she, like the defendant in *Maine*, had no duty to retreat. See *Thomas*, 77 Ohio St.3d 323, 673 N.E.2d 1339. The trial court's instructions to the jury were almost identical to the instructions in Maine. Specifically, in order to find self-defense, the instructions stated that the jury needed to find that Ward believed that "she was in immediate danger of serious bodily harm or death, and that her only means to protect herself from such danger, was by the use of deadly force." We find that this instruction improperly implied that Ward had to retreat if she possibly could, since retreat constitutes a means to protect oneself. Thus, we find that the trial court erred and that the first element of the plain-error analysis is met here.

---

1. In *Maine,* the parties agreed that the defendant had no duty to retreat, because he used nondeadly force against the alleged victim.

{¶ 33} Second, we find that the error here was plain. The Ohio Supreme Court ruled in 1997 that there is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant, and there is no conflict among the districts with respect to this rule of law. See *Thomas*, supra. The trial court here, like the trial court in *Maine*, cannot be faulted for relying upon the Ohio pattern jury instructions, particularly since neither party objected to the instructions. However, the fact remains that the law regarding a cohabitant's freedom from a duty to retreat is well settled. Upon examining the instruction with that aspect of self-defense law in mind, it is clear that the instruction misstates the law. Moreover, our decision in *Maine* constitutes precedent that settles the matter in our district, and thus controlling authority exists at the time the issue is before us for appellate review. See *Johnson*, supra. Therefore, we find that the error here was plain, obvious, and clear.

{¶ 34} Finally, we find that the error affected Ward's substantial rights. Here, based on the evidence presented, i.e., the affray occurred in Ward's home, the trial court should have instructed the jury that Ward did not have a duty to retreat. Instead, the trial court implicitly instructed the jury that Ward had a duty to retreat. Moreover, the parties did not help guide the jury on this issue, because they were silent on it throughout the trial.

{¶ 35} The trial court's inaccurate instruction, coupled with the parties' silence, left the potential for the jury to widely speculate as to what Ward's "only means to protect herself" meant. For example, the jury may have believed Ward's trial version of events, but thought that Ward had a duty to try to protect herself by retreating before the danger became "immediate," i.e., before McConnell came after her with the knife. Likewise, the jury may have believed McConnell's version of the events and thought that Ward had a duty to retreat when she armed herself with a knife, when she started toward the kitchen with the knife and knew that the victim was following her, or even when he came up behind her at the refrigerator. Therefore, we find that the erroneous instruction affected Ward's substantial rights, because it "may" have induced the jury to reach an erroneous verdict. See *Parma Hts.*, 69 Ohio App.3d 623, 591 N.E.2d 726.

{¶ 36} The crux of the state's argument to affirm Ward's conviction is that the implied instruction seems innocuous in this case because the evidence showed that Ward did not have an opportunity to retreat once she was faced with immediate danger. However, the instruction (the duty to retreat) is not just slightly inaccurate. Instead, it has a meaning totally opposite from the correct instruction (no duty to retreat). Therefore, this wrong instruction had a high probability of confusing or misleading the jury.

{¶ 37} Consequently, we find that the trial court's error in instructing the jury meets all three elements of the plain-error analysis. Additionally, we feel that

the plain error in this instance created a manifest injustice, i.e., it denied Ward the right to a fair trial, and that allowing the error to stand may seriously affect the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we sustain Ward's third assignment of error and exercise our discretion to reverse the trial court's judgment based on the plain error in the jury instructions.

## IV

{¶ 38} In her second assignment of error, Ward contends that the trial court erred by ordering her to pay the costs of prosecution without first considering her present and future ability to pay. Additionally, in her reply brief, Ward contends that the trial court erred in failing to notify her that it could order her to perform community service to satisfy her obligation to pay court costs.

{¶ 39} R.C. 2947.23 provides: "(A)(1) In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following: (a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule. (b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount."

{¶ 40} The Supreme Court of Ohio has ruled that, pursuant to R.C. 2947.23, a trial court must assess court costs in every case, even in cases in which the defendant has been deemed indigent for purposes of appointment of counsel. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, at ¶ 8. Thus, the trial court did not err in assessing court costs without considering Ward's present or future ability to pay.

{¶ 41} While we agree with Ward that R.C. 2947.23 makes it mandatory for the judge to inform the defendant that she could be ordered to perform community service, Ward failed to raise this issue in her assignment of error. Moreover, at this time, Ward has not suffered any prejudice from the trial court's failure to inform her that it may, in the future, require her to perform community

service to fulfill her obligation to pay costs. Because Ward did not properly raise the issue and it is not ripe for adjudication, we decline to address it.

{¶ 42} Accordingly, we overrule Ward's second assignment of error.

## V

{¶ 43} In conclusion, we overrule Ward's first and second assignments of error and sustain her third assignment of error. We reverse the judgment of the trial court, vacate the conviction and sentence, and remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

ABELE and McFARLAND, JJ., concur.