[Cite as *State v. Purdin*, 2013-Ohio-22.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 12CA944 |
| v. | : | |
| | : | DECISION AND |
| Rocky Purdin, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Filed: January 4, 2013 |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Craig M. Jaquith, Ohio State Assistant Public Defender, Columbus, Ohio, for Appellant.

C. David Kelley, Adams County Prosecutor, and Kris D. Blanton, Adams County Assistant Prosecutor, West Union, Ohio, for Appellee.

_____

Kline, J.:

{¶1} Rocky Purdin appeals the judgment of the Adams County Court of Common Pleas, which convicted him of murder. Purdin contends that the trial court denied him a fair trial when it allowed the jury to deliberate through the night and into the early morning hours before reaching a verdict. Because the jury's deliberations did not deprive Purdin of a fair trial, we disagree. Purdin next contends that his conviction was against the manifest weight of the evidence because he proved that he acted in self-defense. Because the jury was free to determine that Purdin's self-defense claim was not credible, we disagree. Next, Purdin contends that he suffered from ineffective assistance of counsel because his trial counsel's proposed jury instructions, which the court adopted, improperly implied that Purdin had a duty to retreat. The jury instructions

were a correct statement of the law, and the instructions did not improperly imply that Purdin had a duty to retreat. Therefore, Purdin's trial counsel's performance was not deficient, and Purdin cannot prevail on his ineffective assistance of counsel claim. Purdin next contends that there were several instances of prosecutorial misconduct during Purdin's trial. Purdin did not object to all of the alleged instances of prosecutorial misconduct and, as a result, we review the instances under different standards of review. Nevertheless, the alleged instances of prosecutorial misconduct do not warrant reversal. Accordingly, we affirm the judgment of the trial court.

I.

{¶2} In the early morning hours of December 6, 2010, police arrived at Purdin's home in response to a 911-call made by Purdin's wife, Kathleen. Inside Purdin's home, police found Purdin's stepson, William Stunich, on the floor of the hallway. (Stunich was Kathleen's son.) Purdin had shot Stunich with a rifle, and Stunich passed away shortly after the police arrived. A grand jury indicted Purdin for murder.

{¶3} Purdin claimed that he shot Stunich in self-defense after Stunich assaulted him. According to Purdin's testimony at trial and his statements to police shortly after the incident, the following events led to Stunich's death. On the date of the incident, Stunich was temporarily residing at Purdin's home. Apparently, there was tension between Purdin and Stunich because Purdin believed that Stunich was engaged in criminal activity. During the evening of December 5, 2010, Purdin was watching a football game in his living room. Stunich awoke and went to the kitchen after having slept most of the day. Stunich became angered by comments Purdin had written on some food containers. After reading Purdin's comments, Stunich assaulted Purdin in

the living room.  The struggle then moved from the living room into the hallway, near the bathroom of the home.  Stunich knocked Purdin down in the bathroom, but, after that, Purdin was not sure where Stunich went.  At that point, Purdin retrieved his rifle.  He and Stunich then confronted each other in the hallway.  Purdin testified that he told Stunich to "stop," but Stunich "came at [Purdin,]" so Purdin shot Stunich.  *Id.* at 785. Additionally, Purdin claimed that, after he shot Stunich the first time, "[Stunich] kept coming[.]"  *Id.* at 786.  Ultimately, Purdin shot Stunich three times.  At some point after he was shot, Stunich called out to Kathleen, who had been asleep.  Kathleen called 911, and Purdin surrendered to the police when they arrived.

{¶4}    At trial, the jury found Purdin guilty of murder in violation of R.C. 2903.02(B) (i.e., felony murder) and reckless homicide in violation of R.C. 2903.041(A). Each verdict carried a firearm specification.  The jury could not reach a verdict on Count I, murder in violation of R.C. 2903.02(A).  The trial court merged the felony murder and reckless homicide counts and sentenced Purdin to eighteen years to life in prison. Purdin appealed, but we determined that there was no final appealable order because Count I remained pending.  *See State v. Purdin*, 4th Dist. No. 11CA909, 2012-Ohio-752, ¶ 8-10.  Consequently, we dismissed Purdin's appeal.  *See id.* at ¶ 11.  On March 1, 2012, the trial court dismissed Count I of the indictment.

{¶5}    Purdin again appeals and asserts the following assignments of error: I. "Jury deliberations that commenced at 9:00 p.m. on a Friday night and ended after 3:30 a.m. the following Saturday morning violated Mr. Purdin's rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and by Sections 10 and 16, Article I of the Ohio Constitution. (Tr. 588, 992-93.)"  II.

"Prosecutorial misconduct deprived Mr. Purdin of his constitutionally guaranteed right to a fair trial, in violation of the Fifth and Fourteenth Amendments, to the United States Constitution and Section 10, Article I of the Ohio Constitution (Tr. 798-99, 917, 924-25, 927, 936, 937, 939-40.)"  III. "Mr. Purdin's convictions are against the manifest weight of the evidence, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.  (*Passim.*)"  And IV. "Defense counsel erred in submitting to the court proposed jury instructions on the law of self-defense in a case in which the defendant was assaulted in his own home, and thereby deprived Mr. Purdin of his right to a fair trial before a properly instructed jury, and of his right to the effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.  (Tr. 956-57.)"

II.

{¶6}    In his first assignment of error, Purdin argues that the trial court denied him a fair trial when it allowed the jury (1) to begin deliberating at 9:00 p.m. on Friday, February 25, 2011, and (2) to continue deliberating until it reached a verdict at approximately 3:30 a.m. on Saturday, February 26, 2011.

{¶7}    Initially, we note that Purdin did not object to the trial court's decision regarding the jury's late-night deliberations.  Thus, we will review Purdin's argument for plain error only.  *See State v. Maynard*, 4th Dist. No. 10CA43, 2012-Ohio-786, ¶ 20; Crim.R. 52(B).  "For a reviewing court to find plain error: (1) there must be an error, i.e., 'a deviation from a legal rule'; (2) the error must be plain, i.e., 'an "obvious" defect in the trial proceedings'; and (3) the error must have affected 'substantial rights,' i.e., it 'must

have affected the outcome of the trial.'" *State v. DiCarlo*, 4th Dist. No. 09CA3301, 2010-Ohio-3759, ¶ 34, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Courts should "notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶8} Purdin rested his defense at around 5:00 p.m. on a Friday. The trial court then provided the jury with the following three options for deliberating: (1) to begin deliberating that evening after closing arguments; (2) to return Saturday morning at 9:00 a.m. to begin deliberating; or (3) to return Monday morning at 9:00 a.m. to begin deliberating. The jury voted by secret ballot and decided that it "would like to get started tonight" (i.e., Friday evening). Trial Tr. at 879. The court then asked, "is there any one that by deliberating this evening, that it will cause a hardship upon them or will cause them lack of attention or focus on this case?" *Id.* None of the jurors indicated that it would. The trial court then made arrangements to provide the jury with food.

{¶9} At approximately 9:00 p.m., the jury began its deliberations. Just before midnight, the jury posed two inquiries to the trial court. Neither inquiry suggested that the jury was fatigued. The jury posed another inquiry to the trial court just before 2:00 a.m. When reviewing the jury's inquiry, the trial court noted that "[t]he jury has desired to continue deliberating." Trial Tr. at 974. At around 3:30 a.m., the jury notified the trial court that it had reached a verdict regarding Count II and Count III but was deadlocked regarding Count I. The trial court then declared a mistrial on Count I and accepted the verdicts for Count II and Count III.

{¶10}  Purdin argues that the jury's late-night deliberations deprived him of a fair trial, and in making this argument, Purdin relies on *State v. Albers*, 174 N.W.2d 649 (Iowa 1970).  In *Albers*, the jury received evidence over the course of a nine-day murder trial.  *Id.* at 652.  After taking Thanksgiving Day off, the jury returned the next day (i.e., Friday), at 10:00 a.m., to hear closing arguments and to deliberate.  *Id.*  The jury began deliberating at around 5:30 p.m., and about 2:00 a.m., the jury informed the judge (through the bailiff) that it was hopelessly deadlocked.  *Id.* at 652-653.  The bailiff also indicated to the trial court that one or more jurors "inquired how long they were supposed to deliberate on a verdict."  *Id.* at 653.  The trial court told the bailiff that there was no specific time limit on the jury's deliberations.  *Id.*  The jury returned a guilty verdict at 4:30 a.m.  *Id.*

{¶11}  The *Albers* court held as follows:

> [A] verdict returned after a 2:00 a.m. report by the jury
> that it was deadlocked, an inquiry as to how long they
> would have to deliberate, a reply that there was no
> specific time and a final verdict at 4:30 a.m., cannot
> be allowed to stand as the impartial, uncoerced
> unanimous verdict of the jury.  Under such
> circumstances the premium is on stamina and
> physical strength rather than judgment.  *Id.* at 656.

{¶12}  The concerns from *Albers* are not present here.  The record shows that the jury's verdict was not partial or coerced based on the late night deliberations.  As stated, prior to deliberating, the trial court provided jurors with the opportunity to inform

the court that late-night deliberations would be a hardship.  None of the jurors did so.

Additionally, there were alternate jurors available in case any of the other jurors were

unable to deliberate.  Moreover, the jury's inquiries during deliberations suggest that the

members of the jury desired to continue the deliberations.  In short, there is no

indication that the jury was fatigued or that there was a "premium on stamina and

strength rather than judgment."  *Id.*

{¶13}  Thus, we find that the jury's late-night deliberations did not deprive Purdin

of a fair trial, and the deliberations do not amount to plain error.  *See State v. Holt*, 17

Ohio St.2d 81, 84, 246 N.E.2d 365 (1969); *State v. Anthony*, 2d Dist. No. 95 CA 18,

1996 WL 531582, *8 (Sept. 20, 1996).

{¶14}  Accordingly, we overrule Purdin's first assignment of error.

III.

{¶15}  We next address Purdin's third assignment of error out of order.  In his

third assignment of error, Purdin argues that his conviction is against the manifest

weight of the evidence.  Purdin claims the evidence shows that he acted in self-defense.

{¶16}  When determining whether a criminal conviction is against the manifest

weight of the evidence, we "will not reverse a conviction where there is substantial

evidence upon which the [trier of fact] could reasonably conclude that all the elements

of an offense have been proven beyond a reasonable doubt."  *State v. Eskridge*, 38

Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus.  *Accord State v.*

*Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 41.  We "must review the entire record,

weigh the evidence and all reasonable inferences, consider the credibility of the

witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact

clearly lost its way and created such a manifest miscarriage of justice that the conviction

must be reversed and a new trial granted." *Id.*, citing *State v. Garrow*, 103 Ohio App.3d

368, 370-371, 659 N.E.2d 814 (4th Dist.1995); *State v. Martin*, 20 Ohio App.3d 172,

175, 485 N.E.2d 717 (1st Dist.1983). But "[o]n the trial of a case, * * * the weight to be

given the evidence and the credibility of the witnesses are primarily for the trier of the

facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of

the syllabus.

**{¶17}** Purdin argues that the evidence shows "the jury lost its way in concluding

that the actions Mr. Purdin took on December 5, 2010, were anything other than self-

defense." Appellant's Brief at 10.

**{¶18}** "Self-defense is an affirmative defense, and the burden of going forward

with the evidence of self-defense, and the burden of proof for demonstrating self-

defense, rests with the accused." *State v. DiFrancesca*, 10th Dist. No. 10AP-340, 2011-

Ohio-3087, ¶ 34, citing *State v. Palmer*, 80 Ohio St.3d 543, 563, 687 N.E.2d 685

(1997).[1]

> In Ohio, the affirmative defense of self-defense has
>
> three elements: (1) the defendant was not at fault in
>
> creating the violent situation, (2) the defendant had a

---

[1] We note that Purdin had the burden of proving that he acted in self-defense, even though the incident occurred in Purdin's home. Under R.C. 2901.05(B)(1), a person is presumed to have acted in self-defense when he is in his own residence and uses the defensive force against someone who "has unlawfully and without privilege to do so entered[] the residence [of] the person using the defensive force." However, Stunich was a temporary resident in Purdin's home, and, therefore, Stunich had a right to be in Purdin's home at the time of the incident. Thus, Purdin does not receive the benefit of the presumption under R.C. 2901.05(B)(1). *See* 2901.05(B)(2)(a). As a result, Purdin had the burden of showing by a preponderance of the evidence that he acted in self-defense. *See* R.C. 2901.05(A).

bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).

However, "there is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home." *Id.* at 328.

**{¶19}** Although Purdin presented evidence that, if believed, showed that he acted in self-defense, the jury could have also concluded that the evidence did not support Purdin's self-defense claim. There is no evidence that Stunich was armed or that Purdin believed that Stunich was armed. Consequently, the jury could have determined that Purdin did not have a bona fide belief that he was in imminent danger of death or great bodily harm. The jury could have also concluded that the situation did not call for Purdin obtaining a rifle from a separate room and shooting Stunich. Thus, the jury could have found that, when Purdin obtained his rifle and returned to the hallway to confront Stunich, the initial violent situation had subsided and Purdin was at fault in creating a new, violent situation. "The jury, sitting as the trier of fact, [was] free to believe all, part or none of the testimony of any witness who appear[ed] before it." *State v. Daniels*, 4th Dist. No. 11CA3423, 2011-Ohio-5603, ¶ 23. "Because the jury reasonably could have believed that [Purdin] did not act in self-defense when he [shot Stunich], the jury's decision to reject [Purdin's] claim of self-defense was not against the

manifest weight of the evidence." *State v. Ingram*, 10th Dist. No. 11AP-1124, 2012-Ohio-4075, ¶ 33; *see also State v. Moore*, 2d Dist. No. 20005, 2004-Ohio-3398, ¶ 53.

**{¶20}** As a result, we conclude that Purdin's conviction is not against the manifest weight of the evidence, and we overrule Purdin's third assignment of error.

IV.

**{¶21}** Next, we consider Purdin's fourth assignment of error. In his fourth assignment of error, Purdin argues that he suffered from ineffective assistance of counsel because his trial counsel submitted erroneous jury instructions on the law of self-defense to the trial court. (The trial court gave the requested instructions to the jury.) Purdin argues that the reference to "escape" in the instructions was erroneous because it inappropriately implied that Purdin had a duty to retreat.

**{¶22}** A criminal defendant has a constitutional right to counsel, which includes the right to the effective assistance from counsel. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." *State v. Norman*, 4th Dist. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, ¶ 65, quoting *State v. Countryman*, 4th Dist. No. 08CA12, 2008-Ohio-6700, ¶ 20; *accord State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient * * *[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense * * *[,]" which "requires showing that counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Norman* at ¶ 65. "Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements." *State v. Hall*, 4th Dist. No. 07CA837, 2007-Ohio-6091, ¶ 11. "Deficient performance means performance falling below an objective standard of reasonable representation." *State v. Hutton*, 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 44. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord Strickland* at 694.

{¶23} Initially, we will consider whether Purdin's trial counsel's performance was deficient by reviewing the trial court's self-defense jury instructions. "When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *State v. Ward*, 168 Ohio App.3d 701, 2006-Ohio-4847, 861 N.E.2d 823, ¶ 29 (4th Dist.). Generally, reversal is not warranted "due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict." *Id.*

{¶24} Here, the trial court instructed the jury on self-defense as follows:

The defendant claims to have acted in self-defense.

To establish the claim of self-defense, Rocky

Purdin must prove by the greater weight of the evidence that:

He was not at fault in creating the situation giving rise to the death of William Stunich; and

He had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent danger of death or great bodily harm, and that his only reasonable grounds of escape from such danger was by the use of deadly force; and he had not violated any duty to retreat to avoid the danger.

Now, a person who lawfully is in his residence has no duty to retreat before using force in self-defense against a cohabitant with an equal right to be in the home, even if he could have done so with complete safety. A cohabitant is entitled to use such means as are necessary to repel an assailant, even to the use of deadly force, provided he was not at fault in creating the situation, and provided he had reasonable grounds to believe and an honest belief, even if mistaken, that the use of deadly force was necessary to repel his assailant. Trial Tr. 956-57.

**{¶25}** Purdin argues that the use of the word "escape" in the trial court's instructions misled the jury because it improperly implied Purdin had a duty to retreat when, in fact, he had no such duty. We disagree.

**{¶26}** Initially, we note that the jury instructions were an accurate statement of the law. The instructions stated that, if Purdin was in his home, he had no duty to retreat provided (1) that he was not at fault in creating the violent situation and (2) that he had reasonable grounds to believe and an honest belief, even if mistaken, that the use of deadly force was necessary to repel his assailant. *See State v. Powell*, 176 Ohio App.3d 28, 2008-Ohio-1316, 889 N.E.2d 1047, ¶ 16-22 (2d Dist.) (holding that similar instructions were an accurate statement of the law). When viewing the instructions as a whole, we cannot conclude that the use of the word "escape" in the second element of the self-defense instruction would have erroneously caused the jury to impose a duty to retreat on Purdin.

**{¶27}** Furthermore, the instructions in this case are distinguishable from cases where the jury may have been misled into thinking that a defendant had a duty to retreat. In those cases, the error occurred because the trial court's instructions omitted any reference to the duty of retreat and the effect of finding that the defendant was in his or her home when the incident occurred. *See, e.g.*, *Ward*, 168 Ohio App.3d 701, 2006-Ohio-4847, 861 N.E.2d 823, (4th Dist.) ¶¶ 11, 32; *State v. Huff*, 5th Dist. No. 2006CA81, 2007-Ohio-3360, ¶¶ 23, 39-43; *State v. Parks*, 10th Dist. 11AP-98, 2011-Ohio-4056, ¶ 17; *State v. Maine*, 4th Dist. No. 04CA46, 2005-Ohio-3742, ¶ 12-17. Here, by contrast, the instructions clearly provided the circumstances under which Purdin would not have had a duty to retreat.

**{¶28}** Thus, Purdin's trial counsel did not submit erroneous self-defense instructions to the trial court. As a result, Purdin cannot show that his trial counsel's performance was deficient, and Purdin cannot prevail on his ineffective assistance of counsel claim.

**{¶29}** Accordingly, we overrule Purdin's fourth assignment of error.

V.

**{¶30}** In his second assignment of error, Purdin argues that he was denied a fair trial because of several instances of prosecutorial misconduct.

**{¶31}** "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced." *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 36, citing *State v. Smith*, 97 Ohio St.3d 367, 780 N.E.2d 221, 2002-Ohio-6659, ¶ 45, in turn citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.'" *State v. Givens*, 4th Dist. No. 07CA19, 2008-Ohio-1202, ¶ 28, quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). *Accord State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "Prosecutorial misconduct constitutes reversible error only in rare instances." *State v. Edgington*, 4th Dist. No. 05CA2866, 2006-Ohio-3712, ¶ 18, citing *State v. Keenan*, 66 Ohio St.3d 402, 406, 613 N.E.2d 203 (1993). The "touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.'" *Leonard* at ¶ 36, quoting *Gest* at 257.

**{¶32}** Purdin claims that the state engaged in prosecutorial misconduct when cross-examining Purdin. Purdin also claims that several comments during closing arguments amounted to prosecutorial misconduct. We will first consider the state's questioning of Purdin on cross-examination. Then we will consider the state's comments during closing argument.

A. State's Questioning of Purdin on Cross-Examination

**{¶33}** Purdin testified in his own defense, and at the beginning of cross-examination, the state asked Purdin, "You're the only witness who's had the benefit of hearing every other witness's testimony, isn't that true?" Trial Tr. at 798-99.

**{¶34}** Purdin argues that the state's question impugned his credibility by impermissibly calling attention to Purdin's exercise of a basic constitutional right (i.e., to defend himself in person). Indeed, the Ohio Constitution provides that, "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel[.]" Ohio Constitution, Article I, Section 10. Thus, Purdin had a right to view the testimony of all the witnesses.

**{¶35}** Purdin's trial counsel immediately objected to the state's question and requested a mistrial. The trial court did not declare a mistrial. Instead, the trial court provided a curative instruction. The trial court instructed the jury that "Mr. Purdin is required as a defendant to be present in the courtroom[.]" Trial Tr. at 803. The court also instructed the jury to disregard any negative connotations that could be implied from the state's question. The trial court then polled the jurors individually to determine whether each juror could follow the court's instruction. All of the jurors indicated that they could.

**{¶36}** "'A presumption always exists that the jury has followed the instructions given to it by the trial court.'" *State v. Murphy*, 4th Dist. No. 09CA3311, 2010-Ohio-5031, ¶ 81, quoting *Pang v. Minch*, 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. And based on the trial court's curative instruction, we cannot say that the prosecutor's question prejudiced Purdin and denied him a fair trial. Thus, Purdin has not shown that the question on cross-examination constituted prosecutorial misconduct that mandated reversal.

### B. State's Comments During Closing Argument

**{¶37}** Next, we review the state's comments during closing arguments. We must "view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." *State v. Treesh*, 90 Ohio St.3d 460, 466, 739 N.E.2d 749 (2001), citing *State v. Moritz*, 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980). "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *Smith*, 14 Ohio St.3d at 13-14, 470 N.E.2d 883, citing *State v. Woodards*, 6 Ohio St.2d 14, 26, 215 N.E.2d 568 (1966); *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561 (1982). "A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones." *Smith*, 14 Ohio St.3d at 13-14, 470 N.E.2d 883, citing *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). "'It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'" *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), quoting *Berger* at 88.

### i. Comment on "Escape"

**{¶38}** Purdin argues that the state's claim, during closing argument, that Purdin "did not have to use the gun" because "[i]t was not his only means of escape[,]" improperly implied that Purdin had a duty to retreat. Trial Tr. at 957. Purdin objected to the statement. After a bench conference regarding Purdin's objection, the state made it clear to the jury that Purdin had no duty to retreat if the jury concluded that Purdin was in his home at the time of the incident. As a result, the state's comment did not mislead the jury into believing Purdin had a duty to retreat while asserting a self-defense claim in his own residence. Therefore, Purdin cannot show that the statement amounted to prosecutorial misconduct.

ii. Stunich Had No Duty to Retreat; Purdin's Escalation;

and the School Bus Analogy

**{¶39}** Purdin contends that three additional comments by the state constituted prosecutorial misconduct. Specifically, Purdin takes issue with (1) the state's comment that Stunich had no duty to retreat, (2) the state's comment that Purdin escalated the situation, and (3) the state's analogy of placing children on a school bus to the concept of proof beyond a reasonable doubt. Because Purdin did not object to these comments, we review them for plain error. *State v. Keeley*, 4th Dist. No. 11CA5, 2012-Ohio-3564, ¶ 28. "Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments." *Id.*, citing *State v. Conley*, 4th Dist. No. 08CA784, 2009-Ohio-1848, ¶ 27; *State v. Olvera-Guillen,* 12th Dist. No. CA2007-05-118, 2008-Ohio-5416, ¶ 36.

a.

**{¶40}** Purdin argues that the state improperly argued that Stunich had no duty to retreat. Specifically, the state argued the following to the jury: "William Stunich lived at the house as well for a few days * * *, there was evidence he had a room. He has no duty to retreat." Trial Tr. at 937.

**{¶41}** Purdin argues that the evidence demonstrated that Stunich began the fight that led to Stunich's death. Thus, according to Purdin, because Stunich was at fault in creating the situation, the comment that Stunich had no duty to retreat misled the jury.

**{¶42}** The duty to retreat focuses on the *defendant's* conduct. Thus, whether Stunich (the victim) had a duty to retreat was irrelevant to the issues in this case. That is, Stunich's duty to retreat had nothing to do with whether Purdin murdered Stunich or whether Purdin acted in self-defense.

**{¶43}** However, we are reviewing the prosecutor's statement for plain error, which occurs "only if it is clear that a defendant would not have been convicted in the absence of the improper comments." *Keeley*, 2012-Ohio-3564, at ¶ 28. We cannot say that it is clear that Purdin would not have been convicted in the absence of the prosecutor's comment that Stunich did not have a duty to retreat. As a result, the state's comment regarding Stunich's duty to retreat does not amount to plain error.

b.

**{¶44}** Purdin also claims the state improperly referred to comments Purdin wrote on food containers as an "escalation." Appellant's Brief at 8. Apparently, Purdin and Stunich exchanged barbs by leaving notes on various food containers. For example, the state introduced a recording of law enforcement interviewing Purdin about the incident. During the interview, Purdin explained how the altercation with Stunich began

as follows: "I had just went to the store the other day, and [Stunich] had written some stuff on some things that I bought, and he said…, this tastes like shit, or something like that…, so I wrote, don't eat it[.]" Trial Tr. at 542. During closing argument, the state referred to the notes Purdin made on the food containers as an "escalation." *Id.* at 925. Purdin argues that the state inappropriately attempted to preclude Purdin from asserting his self-defense argument by characterizing Purdin's "innocuous" comments as an "escalation." Appellant's Brief at 8.

{¶45} The effect of the comments on the food containers is a factual matter. The state was permitted to comment on the food containers during closing argument in an attempt to show that Purdin was at fault in creating the situation that led to Stunich's death. Moreover, the jury was free to place the appropriate weight on the state's argument that Purdin escalated the situation by placing the comments on the food containers.

{¶46} Consequently, Purdin cannot show that the state's implication that Purdin escalated the confrontation by writing notes on the food containers amounted to plain error.

c.

{¶47} Purdin also claims that an analogy that the state made during closing argument constituted prosecutorial misconduct. The state attempted to analogize the concept of proof beyond reasonable doubt to placing children on a school bus. Specifically, the state's remarks were as follows:

> [T]he burden on the State was beyond a reasonable
>
> doubt. Let's talk about that for just a minute. You're

gonna get a jury instruction that says proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing rely to [sic] and act upon it in the most important of his or her own affairs.

* * *

I'll give you an example[,] you've either placed a child on a school bus[,] or you've ridden a school bus most likely sometime in your life[,] but what did you know about the school bus?  A little more than it's yellow[,] you've got * * * you don't have any knowledge of the driving record of the driver[,] what kind of night he might have had leading up to his day[,] whether he got enough sleep[,] the maintenance record of the bus[,] you don't know anything much more than it's yellow[,] yet your parents put you on that bus, or you've put a child on that bus[,] because they, in the most important of your affairs, and you were firmly convinced that they would arrive safely.

That is what reasonable doubt is[,] it's proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs.  I give you that illustration, because

you know so little about a bus involving your children,

or your parents about you[,] yet you know so much

more about Rocky Purdin's conduct on December

5th, 2010.  Trial Tr. at 939-940.

**{¶48}**  Purdin argues that the state's analogy "implicitly—yet highly improperly and prejudicially—suggested to the jurors that just as the jurors did have and should have faith that their children would travel safely on a typical school bus, so too should the jurors trust that the State would only bring a meritorious prosecution against Mr. Purdin."  Appellant's Brief at 9.

**{¶49}**  Even assuming the state was attempting to imply to the jury that the state would only bring a meritorious prosecution against Purdin, we cannot say that Purdin "would not have been convicted in the absence of the improper comments."  *Keeley*, 4th Dist. No. 11CA5, 2012-Ohio-3564, ¶ 28.  Thus, the state's school-bus analogy does not amount to plain error.

**{¶50}**  Accordingly, for the reasons stated above, we overrule Purdin's second assignment of error.

**{¶51}**  In conclusion, having overruled all of Purdin's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Harsha, J., concurring:

{¶52}  Appellant's manifest weight of the evidence argument initially seemed persuasive.  But upon further review of the transcripts and the exhibits, I join the principal opinion's conclusion there is no error here.  Based upon viewing the exhibits and the testimony of the BCI technician and the coroner, I conclude the jury could reasonably have found the appellant was very close to the victim when he fired the shots from a position above the victim.  The BCI technician testified that the shots were fired at short range, e.g. 3–24 inches away from the victim.  The coroner indicates all of the shots had a definite downward trajectory, with the last two being 4 inches and 20 inches respectively.  Given that the victim's wounds (apart from the gunshots) reveal much more trauma than that received by the appellant, the jurors would have reasonably concluded the appellant had subdued the victim and shot him the last two times while he lay on the ground.  Thus, the jurors could have rejected the claim of self defense.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, P.J.:  Concurs in Judgment & Opinion.
Harsha, J.:  Concurs in Judgment & Opinion with Opinion.


For the Court


BY:_____
        Roger L. Kline, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**